SANFORD v. FIRST NAT. BANK OF MARYSVILLE, KAN., et al.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1916. Rehearing Denied January 15, 1917.)

No. 4586.

1. MONEY RECEIVED ⬡1—RECOVERY—NATURE OF RIGHT.

The right to recover money had and received is equitable, and to prevail the plaintiff must show that in good conscience he is entitled to the money.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. ⬡1.]

2. CORPORATIONS ⬡376—POWERS—PURCHASE OF OWN STOCK.

In the absence of constitutional or statutory prohibition, corporations have inherent power to buy, to sell, and to retire their own stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. ⬡376.]

3. CORPORATIONS ⬡376—SUIT BY MISTAKE TO RECOVER MONEY PAID.

Payments made by a corporation on notes executed by it in good faith, when solvent, in payment for its own stock, cannot be recovered by its trustee in bankruptcy, representing creditors who became such after the purchase.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. ⬡376.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by W. H. Sanford, trustee in bankruptcy of the W. O. Craig Manufacturing Company, against the First National Bank of Marysville, Kan., and others. Decree for complainant, from which he appeals. Affirmed.

See, also, 201 Fed. 548.

E. H. Gamble, of Kansas City, Mo., for appellant.

D. R. Hite, of Topeka, Kan. (D. W. Mulvane and C. E. Gault, both of Topeka, Kan., on the brief), for appellees.

Before SMITH and CARLAND, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. On June 13, 1902, the Siloam Springs Cold Storage & Ice Company was regularly incorporated under the laws of the state of Arkansas. Its capital stock was $50,000, divided into 2,000 shares, of the par value of $25 each. Its powers were to do a general ice and cold storage business. It purchased a seven-acre tract of ground at Siloam Springs, Ark., and erected thereon an ice and cold storage plant, and equipped and operated the same. The stockholders were various persons of Siloam Springs.

June 11, 1909, W. O. Craig and E. F. Pumphrey bought the entire capital stock of the corporation from R. S. Morris, as trustee, and new certificates for 500 shares each were issued to them and their wives.

July 20, 1910, Theodore H. Polack acquired the stock formerly owned by Pumphrey and wife. The new certificates were issued as

follows: 597 shares to Florence E. Polack (wife of Theodore), and 402 shares to Theodore H. Polack. One share was issued to F. E. Davey to qualify him.

During the two or three weeks immediately succeeding his acquisition of this stock, Mr. Polack negotiated with several parties for the sale of the same. Among these was Mr. W. O. Craig, the owner of the other half of the capital stock. An agreement of sale was made between Craig and Polack shortly prior to September 3, 1910. The purchase price was $15,000. Mr. Polack then said to Mr. Craig that, since Mr. Craig's entire interests were centered in the Siloam Springs Cold Storage & Ice Company, he thought the sale should be made to the corporation, and the corporation should secure with its property the payment of the purchase price. To this Mr. Craig assented. Accordingly, on September 3, 1910, a resolution was unanimously passed at a stockholders' meeting of the corporation, at which the entire stock was present, authorizing the purchase of the Polack stock. In payment therefor two notes were given, for $8,750 each, payable in one and two years, with interest at 6 per cent., making an aggregate of $17,500. The $2,500 over and above the $15,000 purchase price for the stock consisted of a $2,500 note owing by the corporation to the Marysville Bank for a loan of money, payment of which was assumed by Polack. The notes were secured by a second mortgage on the entire property of the corporation, and the same was immediately filed for record. The certificate of stock for 597 shares standing in the name of Mrs. Polack was assigned to the corporation and pasted on the stub of the certificate, and has ever since remained in this stockbook. The certificate for 402 shares issued to Polack himself were assigned to the corporation, but were then redelivered to Mr. Polack as additional security for the notes, and the certificate is now attached to the unpaid renewal note still outstanding. This transaction left Craig and wife the sole owners of the stock of the corporation, and from that time on Craig treated the corporation as his alter ego for business purposes. Its name was soon thereafter changed to the "W. O. Craig Manufacturing Company."

Immediately after receiving the notes and mortgage, made in the month of September, 1910, Polack sold and transferred the same, by an unrestricted indorsement and for their face value, to the firm of Fulton & Hohn. Fulton at the time had knowledge of the fact that these instruments had been given by the corporation in payment of the purchase price of its stock.

October 15, 1910, Fulton, representing the firm of Fulton & Hohn, sold to the First National Bank of Marysville the $8,750 note due in one year, for its face value. At the time of this transaction Fulton was cashier of the bank, and acted in its behalf in purchasing the paper. He thus acted in a dual capacity. On the one hand he represented the firm of Fulton & Hohn in the selling of the paper; and on the other he represented the bank as its cashier in its purchase. No other officer or agent of the bank had any notice or knowledge that the note had been given by the Storage Company as a part of the purchase price of its stock. Fulton's interest being adverse, his knowledge

would not be imputed to the bank. This disposes of one of the notes, and places it in the custody of the bank as a good-faith purchaser in the sense that that term is used when applied to property. Counsel for appellant, however, insists that the bank cannot be given the rights of a good-faith purchaser of negotiable paper, because the note contains conditions which render it nonnegotiable. Kobey v. Hoffman, 229 Fed. 486, 143 C. C. A. 554. But, without deciding the question, we shall dispose of the case upon the assumption that counsel's position is correct.

In December, 1910, the plant of the Siloam Springs Cold Storage & Ice Company was partially destroyed by fire. Insurance was collected in the amount of $54,356.56. Out of this the corporation paid all its general creditors, excepting three, holding claims aggregating $430.33; it also paid the note for $8,750 held by Fulton & Hohn, in full, with interest. It paid $1,750 upon the note held by the Bank of Marysville. It has subsequently made payments upon that note until the principal has been reduced to $4,500. The debt is now held by the bank for that amount in the form of renewal notes. After making the payments above referred to, at the time it collected the insurance money, the corporation was clearly solvent. Its only indebtedness was the $7,000 which it owed the bank, as a balance on the $8,750 note, and the $430.33 due to general creditors. It had on hand cash, $19,749.37, and salvage on the plant, and real estate of the value of $15,000, and $5,000 bills receivable. It rebuilt its plant. The new plant had double the capacity of the one that was burnt, and was, in the opinion of the master and the trial court, too large for the business of the community in which it was located. It was completed in May, 1911, and down to that time the corporation continued to be solvent. It afterwards gave a mortgage for $30,000 upon its entire property. The holder of that mortgage in July, 1912, brought suit for its foreclosure, and caused a receiver of the estate of the corporation to be appointed. July 27, 1912, the corporation was adjudicated a bankrupt, and the plaintiff herein was elected trustee.

The present action was brought against the First National Bank of Marysville, Kan., E. R. Fulton, and H. A. Hohn, Theodore H. Polack, and Florence E. Polack, to recover, with interest, all sums paid by the corporation on account of the notes given to Polack as the purchase price of the stock. The case was referred to a master, who made elaborate findings of fact. His conclusion was that judgment should be entered in favor of plaintiff for the $430.33 owing to creditors who were such at the time the stock transaction occurred, and that the action should be dismissed as to the balance of the claim. Exceptions were filed, and the cause was heard before the trial court upon the report and exceptions. The court overruled the exceptions, confirmed the report, entered judgment in favor of plaintiff for $430.33, and disallowed all other claims. The plaintiff appeals.

The brief contains no specifications of the errors upon which appellant relies, as required by rule 24 of this court (150 Fed. xxxiii, 79 C. C. A. xxxiii). Considering the state of the record, and the confused manner in which the case is presented, we might very properly

refuse to examine any of the matters discussed in the brief, and simply affirm the judgment. Sovereign Camp of Woodmen v. Jackson, 97 Fed. 382, 38 C. C. A. 208; City of Lincoln v. Street Light Co., 59 Fed. 756, 8 C. C. A. 253; Western Assurance Co. v. Polk, 104 Fed. 649, 44 C. C. A. 104. We have, however, examined the case sufficiently to satisfy ourselves that no substantial injustice was done by the trial court.

The case may be looked at under two headings: First, the payments made to the bank and to the firm of Fulton & Hohn; second, the liability of Theodore H. Polack and Florence E. Polack by reason of the notes and mortgage given to them by the corporation as the purchase price of their stock.

[1] As to the payments made to the bank and the firm of Fulton & Hohn, there is clearly no ground of liability. They held the promissory notes of the corporation, for which they paid full value. It is possible that the corporation might have resisted their payment. Upon that question we express no opinion, as some of the notes are now in litigation. The corporation, however, did not resist the collection of the notes. It made the payments voluntarily. We are at a loss to understand upon what ground those payments can be recovered. There was no fraud, no mistake, and, as between the corporation and the parties receiving the payments, no illegality. The right to recover money had and received is equitable. To prevail the plaintiff must show that in good conscience he is entitled to the money. That has been established law for more than a century. It was never more plainly stated than by Chief Justice Mansfield in the case of Moses v. Macferlan, 2 Burrow, 1005; s. c., 2 Keener's Cases on Quasi Contracts, 361. The great Chief Justice there said:

"This kind of equitable action to recover back money which ought not in justice to be kept is very beneficial and therefore much encouraged. It lies only for money which, ex æquo et bono, the defendant ought to refund: It does not lie for money paid by the plaintiff, which is claimed of him as payable in point of honor and honesty, although it could not have been recovered from him by any course of law—as in payment of a debt barred by the statute of limitations, or contracted during his infancy, or to the extent of principal and legal interest upon a usurious contract, or for money fairly lost at play; because in all these cases the defendant may retain it with a safe conscience, though by positive law he was barred from recovering. But it lies for money paid by mistake, or upon a consideration which happens to fail or for money got through imposition (express or implied) or extortion, or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances.

"In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

This language has been quoted and approved in countless decisions both in England and in this country. The cases are collected in Professor Keener's work on Quasi Contracts, page 26 et seq. These payments are not affected by the so-called "trust fund" doctrine, as applied to corporate stock. That doctrine has never been held to forbid a corporation, which is solvent and a going concern, to pay its debts. A corporation thus situated has all the powers over its property which an

individual has. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 38 L. Ed. 1113.

[2] Appellant has a better case against Mr. and Mrs. Polack. There is considerable conflict in the decisions of the courts as to whether a corporation has power to purchase its own stock. The rule, sustained by the weight of American authority, was stated as follows by this court in Burnes v. Burnes, 137 Fed. 781, 789, 70 C. C. A. 357:

"In the absence of constitutional or statutory prohibition, corporations have inherent power to buy, to sell, and to retire their own stock."

See, also, Allen v. Francisco Sugar Co., 193 Fed. 825, 114 C. C. A. 453; Atlanta, etc., Association v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42; Fitzpatrick v. McGregor, 133 Ga. 332, 65 S. E. 859, 25 L. R. A. (N. S.) 50, and note.

The statutes of Arkansas do not prohibit such a purchase. Section 860 of the Arkansas Statutes (Kirby's Dig.) provides that:

"Any corporation organized under the laws of this state may reduce its capital stock, either by releasing unpaid subscriptions for stock, or by refunding to shareholders a portion of the amount paid in by them."

Such reduction must be made by resolution, and a copy of the resolution filed as an amendment to the charter, and other published notice given thereof. The statute also contains this provision:

"Provided that no such reduction shall affect or in any way impair the rights of any person *who is a creditor of such corporation at the time* the reduction is made."

[3] We think it is plain, therefore, that the corporation had power to purchase its stock. But that does not take us far in the decision of a concrete case. Whether an exercise of such power will be approved or condemned must depend upon the facts of the particular case. Most of the confusion in the decisions has been caused by attempts to lay down universal rules. Was there a fraudulent purpose to injure existing creditors, or other stockholders, or future creditors? Was the necessary result of the transaction to produce such injury? Did the injury result immediately, or did it result remotely and become commingled with other events, so as to leave the question in doubt as to whether the stock purchase was the real cause of the alleged injury? Was the corporation insolvent at the time, or did the transaction precipitate its insolvency? These are some of the considerations that have controlled courts in condemning or sustaining the purchase of its own stock by a corporation. When the facts of the present case are looked at, we think the case was properly decided. There was no actual fraud upon either creditors or stockholders. The corporation was solvent at the time, and continued to be so for more than a year thereafter. All existing creditors were fully paid, or provision made for their payment, by the decision of the lower court. The real cause of the corporation's insolvency was not the stock purchase, but the branching out into new and improvident business enterprises. All the creditors who are now represented by the plaintiff extended their credit in the promotion of such new enterprises. These are the considerations which ought to control, and we think they sustain the action of the trial court. The

case of Lefker v. Harner (Ark.) 186 S. W. 75, much relied on by appellant, involved a trust company, and turned upon a statute peculiar to such corporations. For that reason it is not in point.

Appellant relies upon some other transactions, but none of them have more merit than the one which we have discussed.

The decree is affirmed.