CONSOLIDATED MUSIC CO. et al. v. BRINKERHOFF PIANO CO.

No. 693.

Circuit Court of Appeals, Tenth Circuit. April 11, 1933.

D. A. Skeen, of Salt Lake City, Utah (Jesse R. S. Budge, A. B. Irvine, and Sam D. Thurman, all of Salt Lake City, Utah, on the brief), for appellants.

Grant H. Bagley, of Salt Lake City, Utah (Waldemar Van Cott, P. T. Farnsworth, Jr., W. Q. Van Cott and B. R. Howell, all of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

All parties having moved for a directed verdict at the close of the evidence, the trial court held that the Consolidated Music Company and R. W. Daynes were liable to the appellee for breach of their agreement to repurchase preferred stock of the Music Company, which the appellee had acquired for cash in order to help the Music Company over a financial sand bar. The receiver of the Music Company, appointed by a state court after this action was filed, was permitted to intervene, and thereupon asserted that the appellee should not share ratably with certain creditors in the distribution of assets in its hands as receiver. The trial court, having no dominion over the receiver or the assets, declined to meddle with the distribution of the assets in the possession of the state court, and dismissed the receiver from the cause "without prejudice to its rights to assert the said rights and claims in any other proceeding or action." The receiver, the Music Company, and Daynes, appeal.

The articles of incorporation of the Music Company authorize the issuance of preferred stock, and make provision for its retirement. Creditors were therefore advised by the charter that stock so issued did not constitute a permanent fund to which they might look. In January, 1924, the company endeavored to relieve its financial embarrassment by issuing preferred stock, and offered to sell some of such stock to appellee. After much correspondence, appellee bought 200 shares, for which it paid $20,000 in cash, upon the company's written agreement to repurchase it at $110 per share within five years, or when the Music Company disposed of certain real estate. Daynes, the secretary and manager of the Music Company, in a separate writing, agreed that "either he or the Consolidated Music Company" would repurchase such stock on those terms. Within the time specified, appellee exercised its right to resell the stock to the Music Company. The company was not able to comply with its obligation, and after a long and acrimonious correspondence, carried on by Daynes for the Music Company, appellee agreed to a substituted performance in that it would accept $400 a month until the $20,000 with interest was paid, in which event the original agreement would be canceled, but otherwise to remain in full force and effect. Daynes did not sign any substituted agreement for himself, but asked for and received these ameliorated terms for his corporation. The company paid for a few months and then quit. This action is at law upon the original contract, credit being given for the trifling amount actually paid under the substituted agreement. The company's defense is that it could not legally buy its own stock; Daynes' defense is that his obligation was that of a guarantor and was discharged by the extension of time accorded the company at his request.

A few days after this action was filed, the state court appointed a receiver for the properties of the Music Company. The receiver intervened in this action, of its own volition, and set up that the company was insolvent when the original contract was made, and therefore the contract was voidable as to existing creditors, at least. Much of the trial dealt with the question of the rights of creditors. At the conclusion of the trial, Judge Johnson dismissed the receiver from the cause, without prejudice to its rights to assert any claims of creditors as to the distribution of the corporate assets in the court of administration. That issue being eliminated, nothing remained but the bald assertion of the Music Company that the contract was void, and the assertion of Daynes that the subsequent contract discharged him of liability.

One of the most stubbornly fought conflicts in corporation law is over the power of a corporation to purchase its own stock. The English courts have quite uniformly adhered to the trust fund doctrine that, in the absence of statutory or charter authority, a corporation is without power to acquire its own shares; that the capital of a corporation is held in trust for its creditors; that since it is the only fund to which they may

look for the payment of their claims, it may not be distributed to the shareholders by the purchase of their stock, for to do so would be to enable the shareholders to secure a priority over corporate creditors. Many of the courts of this country have followed the English doctrine. On the other hand, undoubtedly the majority of the jurisdictions in the United States have held to the so-called "modern rule" that in the absence of statutory or charter prohibition, and without express authority, a corporation may purchase its own shares, if done in good faith and without injury to creditors. Other decisions take various middle grounds, that corporate surplus only may be used for such purpose, or condition the power on the solvency of the corporation, or hold the transaction voidable as to existing creditors, or subsequent creditors without actual notice. Cases from all jurisdictions that had passed on the point by 1927 are gathered in Thompson on Corporations (3d Ed.) §§ 4081 to 4099. The point is becoming of less practical importance because statutes are being enacted, from time to time, marking expressly the limits of the power. The Supreme Court of the United States has not passed directly on the point, as far as we can discover. The two cases generally cited are not persuasive; in Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532, a statute prohibited national banking associations from such purchase except within narrow limits; the statement in Commissioners of Johnson County v. Thayer, 94 U. S. 631, 24 L. Ed. 133, is the merest kind of an aside. The Eighth Circuit has adhered to the modern rule, Burnes v. Burnes, 137 F. 781, First Trust Co. v. Illinois Cent. R. Co., 256 F. 830, although in Sanford v. First Nat. Bank, 238 F. 298, that court upheld a decree setting aside the purchase by a corporation of its own stock as to creditors existing at the time of the purchase, but upholding the purchase as to subsequent creditors. No decision of the Supreme Court of Utah has been called to our attention. A decision of that court as to the powers of corporations created by that state would be of persuasive, if not controlling, weight.

■ We do not enter into any discussion of this troublesome question. It would not accord with the proprieties to go further than absolutely necessary, particularly in view of the fact that the question may be presented to the state court. All that is necessary in this case is to hold, as we do, that a corporation may obligate itself by an agreement made at the time and as a part of the contract of sale, to repurchase preferred shares which are not

a part of its permanent capital structure; and that where rights of creditors are not in issue, the solvency of the corporation at the time the contract was made is not important. Ophir Consol. Mines Co. v. Brynteson (C. C. A. 7) 143 F. 829; Schulte v. Boulevard Gardens Land Co., 164 Cal. 464, 129 P. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013; Vent v. Duluth Coffee & Spice Co., 64 Minn. 307, 67 N. W. 70; Thompson on Corporations (3d Ed.) § 4086; Fletcher on Corporations, vol. 2, § 1137.

■ Daynes relies for a reversal on the ground that a guarantor is exonerated by a material alteration of the principal obligation. The case of Atlas Assur. Co. v. Lawrence (C. C. A. 8) 34 F.(2d) 401, 405, is cited, but the brief does not advise that such case was decided on a North Dakota statute which requires such exoneration if the obligation is altered "in any respect," and which limits its application to alterations made "without the consent of the guarantor." We are also cited to Mann v. Mt. Union Tanning & Extract Co. et al. (D. C.) 267 F. 448, 452; but our attention is not called to that court's statement that a variation in the obligation discharges the guarantor only if made "without the consent of a surety or guarantor." And so of the references to Corpus Juris; counsel failed to note that on the same page (28 C. J. 998) as that cited in the brief, is the clear statement that, "Of course the guarantor is not released by changes * * * which are made with his knowledge and consent, and his assent to the change or modification will bind him without any new consideration." In Miller v. Stewart, 9 Wheat. 680, 703, 6 L. Ed. 189, the rule as to release of the guarantor was qualified by the expression "if he does not assent to any variation of it." See, to same effect, U. S. Fid. & Guaranty Co. v. Golden Pressed & Fire Brick Co., 191 U. S. 416, 423, 24 S. Ct. 142, 48 L. Ed. 242; United States v. Freel, 186 U. S. 309, 316, 22 S. Ct. 875, 46 L. Ed. 1177.

We pass by the question of whether Daynes was a guarantor or entered into a direct obligation to purchase this stock if the corporation did not, and also the point that this action is on the original contract, and not the abortive one of substituted performance; for this change was made not only with his consent, but at his instigation and request. For his own benefit and that of his corporation, he sought for and secured a modification of the original terms. It would be the rankest sort of injustice to permit him to set up the fruits of his own endeavors to defeat his honest obligation.

The action of the trial court in dismissing the receiver from the cause, without prejudice to his rights to assert the priority of other creditors in a distribution of corporate assets, was clearly right. The state court, having taken possession of the corporate assets, is entitled to administer them to the exclusion of every other court. Boynton v. Moffat Tunnel Imp. Dist. (C. C. A. 10) 57 F.(2d) 772, certiorari denied, 287 U. S. 620, 53 S. Ct. 20, 77 L. Ed. ——, and cases therein cited. If the trial court had undertaken to enter a decree that the appellee should have a certain proportion of the assets, or that the state court, in marshaling claims for participation in the assets, should give to appellee's claim a particular rank, the trial court could not enforce the order, and any attempt to do so would be a vain intermeddling with the administration of properties in the possession of another court. On the other hand, appellee had a perfect right to establish its claim against the corporation in a court of its own choosing; the action being properly brought in the United States court, the subsequent appointment of a receiver in another court does not stay the action. Appellee's claim is now established as a corporate obligation; all other courts must accord full faith and credit to that judgment, and its validity cannot be challenged in another forum. If appellee sees fit to file its judgment with the receiver and ask for a participation in the assets in its hands, the receiver cannot deny the validity of the obligation, but must accord it the full faith and credit demanded by the constitution. While the existence of the obligation in personam is now settled, and with it a right to share in a distribution of corporate assets, if any question arises among creditors as to priority in the distribution of assets in the possession of the receiver, that question is for the state court to determine. Hatch v. Morosco Holding Co., Inc. (C. C. A. 2) 19 F.(2d) 766. More shortly stated, the trial court established the existence of the obligation; to what other claimants to corporate assets it may be junior or senior is for the court of administration. The recent case of Riehle v. Margolies, 279 U. S. 218, 49 S. Ct. 310, 313, 73 L. Ed. 669, deals at length with this particular problem. Among other things, the court said:

"He had, under section 265 of the Judicial Code [28 USCA § 379], the right to prosecute that suit to judgment despite the institution later of the receivership proceedings. He must have, as an incident thereof, the further right to have it accepted therein as an adjudication of the existence of the indebtedness. * * *

"Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him."

The court did not err in declining to transfer the case to the equity docket. It was a straight action at law with legal defenses. Whether equitable issues were tendered by the receiver is not now of importance, since it was rightfully dismissed out of the case.

The judgments and order of dismissal as to the receiver are, in all respects, affirmed.