(164 App. Div. 746)

CURRAN v. OPPENHEIMER et al.    (No. 6430.)

(Supreme Court, Appellate Division, First Department. December 4, 1914.)

1. CORPORATIONS (§ 544*)—ASSETS—"TRUST FUND."

The assets of a corporation are a "trust fund" for the payment of debts, and a corporate creditor cannot be wrongfully deprived of his equitable lien thereon.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2162–2169; Dec. Dig. § 544.*

For other definitions, see Words and Phrases, First and Second Series, Trust Fund.]

2. CORPORATIONS (§ 349*)—LIABILITY OF DIRECTORS—DISSOLUTION OF CORPORATION.

The failure of the directors of a corporation to formally dissolve the corporation on a distribution of assets among themselves does not, in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
150 N.Y.S.—24

absence of fraud or bad faith, render the directors liable to the full amount of the claim of a judgment creditor of the corporation; but the remedy of the creditor extends only to the property which would have been, but for the action of the directors, applicable to the payment of his claim, notwithstanding General Corporation Law (Consol. Laws, c. 23) §§ 90, 91, defining the liability of directors.

[Ed. Note.—For other cases, see Corporations, Cent.. Dig. §§ 1459, 1462; Dec. Dig. § 349.*]

3. CORPORATIONS (§ 566*)—LIABILITY OF DIRECTORS—DISSOLUTION OF COR-PORATION.

A corporation obtained an assignment of a contract for the purchase of real estate, including the partial payment of the price. Its directors advanced money for a conveyance of the property to the corporation and received mortgage bonds therefor. *Held*, that the bonds were a prior lien on the assets of the corporation as against a subsequent creditor of the corporation obtaining a judgment against it, on which an execution was returned unsatisfied.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

4. CORPORATIONS (§ 349*)—LIABILITY OF DIRECTORS—DISSOLUTION OF COR-PORATION.

·The fact that one who earned a commission for procuring a contract of sale of real estate, assigned to a corporation obtaining a conveyance of the property, divided among directors the commission paid, did not af-fect the liability of the directors distributing between themselves the assets of the corporation without formally dissolving it, as against a creditor of the corporation obtaining an unsatisfied judgment against it on a claim accruing subsequent to the division of the commission.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1459, 1462; Dec. Dig. § 349.*]

5. CORPORATIONS (§ 566*)—LIABILITY OF DIRECTORS—DISSOLUTION OF COR-PORATION.

Where the directors of a corporation owning real estate advanced money to pay taxes and interest on an underlying mortgage prior to the time of the accrual of a cause of action in favor of a creditor of the cor-poration obtaining judgment against it which remained unsatisfied, the mortgage given to secure the repayment of the advances was superior to the claim of the creditor, though instruments to be issued to the directors were not actually issued, for equity, when there is an agreement to give a lien, will establish the lien, though the instrument evidencing it has not been executed, and because the directors were subrogated to the rights of the persons entitled to the interest and taxes constituting prior liens on the property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

6. CORPORATIONS (§ 360*)—LIABILITY OF DIRECTORS—WRONGFUL DISTRIBU-TION OF ASSETS.

A creditor of a corporation, who seeks to recover from the directors on the ground that they have wrongfully distributed corporate assets, may not recover on the theory of liability for unpaid subscription to the capital stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1503, 1505; Dec. Dig. § 360.*]

Hotchkiss, J., dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Robert I. Curran against August Oppenheimer and others. From a judgment for plaintiff, defendant named appeals. Reversed, and complaint dismissed.

See, also, 163 App. Div. 893, 147 N. Y. Supp. 1105.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Louis Marshall, of New York City, for appellant.

Alexander S. Andrews, of New York City, for respondent.

McLAUGHLIN, J. Some time prior to January 31, 1903, the defendants, for the purpose of acquiring title to certain real estate in the city of New York, entered into an agreement among themselves to advance the necessary money to make the purchase. On February 11, 1913, their representative, one Delaney, contracted with one Del Solar, representing the owners of the land, for its purchase. The contract provided, in substance, for a sale of the land to Delaney for $625,000—$25,000 to be paid in cash on the execution of the contract, $140,050 on the delivery of a deed, and $459,950 by taking the property subject to six underlying mortgages aggregating that amount. On the day the contract was executed the $25,000 was paid, and it was then assigned to one Sinauer, another representative of the defendants. The United Realty Corporation was then organized by the defendants, with a capital stock of 2,000 shares, of the par value of $100 each, for the purpose of taking title to the property, and the contract for its purchase was assigned to the corporation by Sinauer, in consideration of the issue of $170,000 of the bonds of the corporation and all of its capital stock. A mortgage for $200,000 was then executed by the corporation and delivered to the Mutual Alliance Trust Company as security for the payment of the $170,000 in bonds. In accordance with the original understanding between the defendants, they advanced the $170,000 necessary to make the purchase, $25,000 of which was paid at the time the contract was signed, and received in return the $170,000 of bonds of the corporation and its capital stock; the stock being distributed among them in proportion to the amount of money which each had advanced.

Subsequently the corporation found it necessary to raise money for the payment of taxes upon the land and interest upon the underlying mortgages, and a second mortgage was, in December, 1903, executed to the Mutual Alliance Trust Company for $50,000 to secure the payment of what is termed "participation certificates"; that is, certificates representing the amounts of money advanced to pay the taxes and interest. These certificates, to the amount of $25,500, were issued to defendants for an advance of that amount in December, 1903, or January, 1904; and within the next year they made further advances amounting to $25,000 for the same purposes, but certificates representing that amount do not appear to have been issued. The defendants, therefore, up to December, 1904, or January, 1905, had actually advanced in cash to the corporation $220,500. On October 3, 1905, the corporation contracted to sell the land to one Field for $735,000, pay-

able $25,000 in cash on the execution of the contract, $75,000 on delivery of the deed, $175,050 by a purchase-money mortgage, and $459,950 by taking the property subject to the same underlying mortgages as when purchased by the corporation. The contract was completed on the 2d of February, 1906, by the delivery of a deed of conveyance to Field, and the payment by him of the cash stipulated, and the delivery of a mortgage for the amount stated, which mortgage by its terms carried interest from November 2, 1905. At the time of this conveyance the trust company, with the consent of the bondholders, delivered a satisfaction piece of the outstanding $200,000 mortgage, and the purchase-money mortgage for $175,050 was assigned to the trust company as substituted security. The principal and interest of this mortgage was subsequently paid and the mortgage satisfied. Out of the moneys thus received, the brokerage commissions on the sale to Field were paid, and other debts of the corporation, which I do not understand are questioned. Thereafter the corporation had in its treasury $246,733.40. Between February 5, 1906, and January 15, 1907, this sum was distributed among the defendants in proportion to the bonds held by them and the sums advanced to pay the interest and taxes above alluded to.

The plaintiff is the assignee of a judgment rendered against the corporation in May, 1909; the claim upon which it was recovered having arisen in February, 1906. Execution upon the judgment was returned wholly unsatisfied, and this action was brought against the directors of the defunct corporation to recover such amount, with interest thereon, from them. The plaintiff had a judgment for the sum claimed, from which the defendant Oppenheimer appeals; he alone having been served in the action.

[1] The respondent contends that under sections 90 and 91 of the General Corporation Law the directors of the defunct corporation, in distributing all of its assets among the defendants without a formal dissolution proceeding and notice to the plaintiff, made themselves severally liable to him for the amount of his claim. In this connection attention is called to the cases of Darcy v. Brooklyn & New York Ferry Co., 196 N. Y. 99, 89 N. E. 461, 26 L. R. A. (N. S.) 267, 134 Am. St. Rep. 827, and Hurd v. New York & Commercial Laundry Co., 167 N. Y. 89, 60 N. E. 327. It is true, as stated in the authorities cited, that the assets of a corporation constitute a trust fund for the payment of its debts, and that a creditor cannot be wrongfully deprived of his equitable lien thereon.

[2] But it by no means follows that the mere failure to formally go through dissolution proceedings entitles a creditor, in the absence of proof of fraud or bad faith, to recover from the directors the amount of his claim, when it affirmatively appears that he would not have been entitled to the payment of any part of it had the corporation been thus dissolved. A creditor's remedy under a situation similar to that presented by this record, I think, extends only to the property which would have been, but for the action of the directors, applicable to the payment of his claim.

[3] If this be so, then all that remains is to ascertain how much, if anything, the plaintiff would have received in case the corporation

had been formally dissolved. This necessarily depends upon the validity and priority of the liens asserted by the defendants upon the proceeds of the sale of the corporation's property. Whether such liens were valid, and entitled to payment before the payment of plaintiff's judgment, must be determined, not by sentiment, but rather by the application of equitable principles to the established facts. The fact is undisputed that defendants advanced in the transaction the sum of $220,500, $170,000 of which was represented by bonds secured by a mortgage upon the real estate in question. The respondent asserts that some of the bonds were issued without consideration, and therefore invalid. He claims that valid bonds could not be issued for the $25,000 which was paid before the corporation was formed upon the signing of the Del Solar contract. The answer to this is that the entire contract, including the $25,000 paid thereon, was assigned to the corporation. The defendants had paid $170,000 for a conveyance of the property. The corporation received this conveyance, and the amount paid was the consideration of the bonds.

[4] It is further claimed, and the court so found, that commissions paid to one Grannis for bringing about the original contract of sale were divided equally among Grannis and the defendants Oppenheimer and McCreery. But, if so, it is no concern of the plaintiff's, because after Grannis had earned his commissions he could divide them with others, give them away, or do with them as he saw fit. The validity of the bonds depends upon whether the corporation received a proper consideration for their issue. The defendants actually advanced for the corporation $170,000 in cash. It was by reason of this advance that the corporation obtained the title to the land. Having obtained the title in this way, as I understand the law, it had a perfect right to repay the defendants in bonds secured by a mortgage upon its real estate. This is precisely, in effect, what it did. The mortgage was executed and the bonds delivered long prior to the time when the cause of action which finally merged in the judgment accrued. These bonds were, therefore, a prior lien upon the fund in question, and, had there been a formal dissolution, they would have had to be paid, with interest thereon, before anything was received by the plaintiff.

[5] I am also of the opinion that the defendants had a claim, prior to the plaintiff's, upon the fund distributed for the amount advanced to pay the taxes upon the land and the interest upon the underlying mortgages. The fact is undisputed that $50,500 was advanced by the defendants for these purposes. A mortgage for $50,000 was made for the purpose of providing money to make these payments. This mortgage was to secure the payment of participating certificates, of which it appears that $25,500 was actually issued. This mortgage was executed and the moneys advanced by the defendants prior to the time the cause of action accrued which finally merged in the judgment now held by the plaintiff. The fact that the participating certificates were not actually issued for the other $25,000 advanced I do not consider important. The $25,000 was actually advanced, and the fact is not disputed. The mortgage was given to secure the repayment of these advances, and, in determining whether the defendants have a

lien prior to the plaintiff's, their claim should be considered as though the participating certificates had actually been issued. Where there is an agreement to give a lien, but the instrument evidencing it is never executed, equity will enforce the agreement and establish the lien, because it regards as done that which ought to be done. Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000; National Bank of Deposit v. Rogers, 166 N. Y. 380, 59 N. E. 922. The money was advanced upon the theory and under the belief that participating certificates would be delivered representing them, and such certificates were secured by the mortgage already executed. The interest and taxes were liens upon the property, and when paid by defendants they became subrogated to the rights of the owners of the claims thus discharged. Pease v. Egan, 131 N. Y. 262, 30 N. E. 102; Arnold v. Green, 116 N. Y. 566, 23 N. E. 1; Gans v. Thieme, 93 N. Y. 225.

There is nothing in the record to indicate and the court has not found, that the defendants, in the formation of the corporation and its subsequent management, including the distribution of the fund referred to, acted in bad faith, or for the purpose of escaping liability to the plaintiff or any one else. The amount of the bonds, together with the interest thereon, and the amount advanced for the payment of taxes and interest on the underlying mortgages, exceeded the amount distributed among the defendants. If the defendants had a prior lien on this fund, as I think they did, then, had there been a formal dissolution, plaintiff would not have received anything. He could not, therefore, have been injured by the fact that a formal dissolution of the corporation was not had.

[6] Finally, it is said defendants paid nothing for their stock. But this action is not brought against them to recover for unpaid subscriptions. It is an action to recover from defendants as directors on the ground that they have wrongfully and unlawfully distributed the assets of the corporation. This is the theory of the complaint, and it is the theory upon which the action was tried and decided. If they are still liable for unpaid subscriptions to the capital stock, that liability can be enforced in a proper action brought for that purpose.

For the foregoing reasons, I am of the opinion the judgment appealed from should be reversed, and the complaint dismissed, with costs to the appellant; the order, findings, and judgment to be entered to be settled on notice.

INGRAHAM, P. J., and LAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. I concur with my Brother McLAUGHLIN on all points save one. The appellant, Oppenheimer, and his associates, were promoters of the corporation. When the corporation took over the real estate which it was organized to buy, Grannis, the broker for the vendor, under a secret arrangement with Oppenheimer and McCreery, another of the promoters, consummated through dummies and with the indirection customary in transactions of that nature, divided his commission of $6,250 into three parts, one of which he paid to Oppenheimer and one to McCreery. It is elementary law that for secret profits promoters are liable to account to the future corporation or to its

representative in insolvent proceedings.   10 Cyc. 274, and cases cited. The fact that the corporation was not itself entitled to any part of the commission—that it belonged to Grannis—I do not regard as controlling.   The profit was made in a transaction of the company, and was brought about by or through the payment of its moneys.   Boston Deep Sea Fishing & Ice Co. v. Ansell (1888) Law Rep. 39 Ch. Div. 339, 354, 363, 364.   The claim of the corporation against Oppenheimer and his associates was an asset of the corporation in their hands, which they were not entitled to retain.   McClure v. Law, 161 N. Y. 78, 55 N. E. 388, 76 Am. St. Rep. 262.   It is true that the complaint in this case makes no mention of the Grannis transaction and specifically demands no relief in that regard; but a recovery on its account is in my opinion germane to the complaint as drawn, and properly covered by the prayer for general relief.

Moreover, the facts are found by the court below (folio 75).   To the extent of his proportionate interest in this item, I think the plaintiff may recover.