EDWARD SHAW, Respondent, *v.* THE ANSALDI COMPANY, INC., VERNON CASTLE and IRENE CASTLE, Appellants.

First Department, June 15, 1917.

Corporations — right of directors and officers to compensation — excessive salaries — right of directors to declare dividends as salaries — judgment creditor's action against directors — consideration for issuance of stock — disbursements not in violation of Stock Corporation Law, section 66, where corporation solvent — extent of liability of directors for impairment of capital stock in violation of Stock Corporation Law, section 28.

It is not unlawful for the sole stockholders of a corporation, who are also its directors, to take from its earnings a reasonable amount for their services, aside from their failure to pay in and retain unimpaired the capital stock.

Even when excessive salaries have been voted to themselves by said direct-
ors, but in good faith and without intent to defraud creditors, they may
be allowed to retain such part thereof as will reasonably compensate them
for their services for the performance of which others might have been
employed.

In an action by a judgment creditor of a corporation who had sold property
of the corporation on which he held a chattel mortgage, the interest on
which had not been paid, resulting in a deficiency judgment, brought
under sections 90 and 91 of the General Corporation Law to compel the
officers and directors to account to a receiver to be appointed on the theory
that disbursements of money made by the defendants to themselves, as
salaries, which for that reason were voidable at the instance of the cor-
poration, may be avoided by its creditors on the ground that the capital
of the corporation was thereby impaired in violation of section 28 of the
Stock Corporation Law, a judgment cannot be sustained under section
55 of the Stock Corporation Law, although the stock was issued without
consideration, because a violation of said section was not alleged and the
complaint was not so amended, and for the further reason that the liability
of each of the defendants on that theory would be limited by section 56
of the Stock Corporation Law to the capital stock received by him.

The issuance of capital stock in consideration of services to be performed in
the future is unauthorized by section 55 of the Stock Corporation Law.

A judgment in such an action cannot be sustained under section 66 of the
Stock Corporation Law on the theory that all disbursements subsequent
to default in paying interest on the plaintiff's mortgage after demand
were in violation of the provisions of said section, where the company
was not financially embarrassed when it made default.

Under chapter 354 of the Laws of 1901, amending what is now section 28 of
the Stock Corporation Law, the liability of directors on the ground that
the capital of the corporation has been impaired is confined to the loss
sustained by the corporation or its creditors by the wrongful declaration
and payment of dividends.

PAGE, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendants, The Ansaldi Company, Inc.,
and others, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county
of New York on the 31st day of March, 1916, upon the decision
of the court after a trial at the New York Special Term.

*Charles H. Tuttle* [*William Klein* with him on the brief],
for the appellants.

*Max L. Schallek* [*Samuel Strasbourger* with him on the brief],
for the respondent.

Laughlin, J.:

The plaintiff brought this action as a judgment creditor of the defendant corporation to compel the individual defendants to account to a receiver to be appointed by the court, on the theory that as officers and directors of the company they distributed to themselves and to one Ansaldi, who was its president, the sum of $32,999.99, in violation of their duty and of law, leaving the company without sufficient assets to satisfy the plaintiff's claim.

The prayer for relief follows the provisions of subdivision 2 of section 90 of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28) by demanding that the defendants account for any money and the value of any property which they have acquired to themselves or transferred to others or lost or wasted by violation of their duties as directors; but that the money for which they are liable be paid over to the *receiver* for the benefit of the company and its creditors instead of directly to the company or to its creditors as provided in the statute. The complaint clearly shows that the action is based on the provisions of said section 90 of the General Corporation Law, and was brought by a creditor by virtue of section 91 thereof. The judgment recovered is for the amount of a judgment recovered by plaintiff against the corporation and with interest thereon together with costs. The recovery, however, is in favor of the plaintiff, without the appointment of a receiver, and against the individual defendants for the amount of the judgment and interest together with costs, and against the corporation for costs only. The complaint was not amended. The learned counsel for the respondent contends in his points that the action was brought under said section 90 of the General Corporation Law and that the recovery is sustainable thereunder. The provisions of that section, so far as material here, are contained in subdivision 2, which, among other things, authorizes an action against officers or directors to recover a judgment, as follows: " Compelling them to pay to the corporation, which they represent, or to its creditors, any money, and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or by other violation of their duties."

On the 7th day of November, 1913, the individual defendants and one Ansaldi entered into an agreement in writing for the formation of a corporation under the laws of New York, under the name under which the defendant company was subsequently incorporated, to operate a restaurant in that part of the Heidelberg Building at Broadway and Forty-second street then occupied and used as a restaurant by the Michaud Catering Company. It was provided in the agreement that the capital stock should be $10,000, and that each should subscribe one-third, but that the odd share should be taken by Ansaldi, and that they should become the directors and would immediately on the organization of the company authorize it to take a lease of the premises according to the terms of an agreement in writing made at the same time between them and one McEwen as receiver, and that they would likewise authorize the execution of the necessary instruments to continue the life and validity of a certain chattel mortgage then covering the property in the restaurant executed by said Michaud Catering Company to the plaintiff; that Ansaldi should be the manager of the restaurant and that the individual defendants should dance therein and in no other restaurant or cabaret in New York city, every day that the restaurant should be open for business at hours to be agreed upon, and that all the stock should be immediately delivered to one Barth as trustee under a voting trust for the period of five years, upon condition that should any of them fail to render to the company the services agreed to be rendered, the stock of the party so failing should become the property of the others, and authority to decide whether the services were so rendered was given to the voting trustee. The agreement for the lease provided that the receiver should rent the premises to a corporation to be incorporated, under the name of the defendant company, for a term to commence on the 1st day of December, 1913, and to expire on the 1st day of May, 1930, at specified annual rentals payable in monthly installments on the first day of each month; and it recited that the individual defendants and Ansaldi had paid the rent for the month of December at the time of the execution of the agreement, and that they all assumed the liabilities then existing under the chattel mortgage on the

restaurant furniture and equipment held by the plaintiff. The company was incorporated on the 24th day of November, 1913, as contemplated, excepting that it was provided that the company should begin business with $5,000, which was one-half of its capital stock, and the individual defendants and Ansaldi were represented in the incorporation by three others who were named as the directors for the first year. The first meeting of the incorporators was held on the fourth day of December. At that meeting the two agreements executed by the individual defendants and Ansaldi together with assignments thereof to the company were presented and accepted, and a lease from the receiver to the company as contemplated was presented and its execution was authorized. There was also presented a bill of sale from the plaintiff to the company and a chattel mortgage from the company to the plaintiff, and the bill of sale was accepted and the execution of the chattel mortgage was authorized. On the same day the directors met and resigned in turn and the individual defendants and Ansaldi were elected directors and the latter was elected president and treasurer, Mrs. Castle, vice-president and Mr. Castle, secretary, and the action theretofore taken by the incorporators was ratified, and it was resolved that the value of the contracts for the lease and for the organization of the company and the services agreed to be rendered by Ansaldi as manager and by the Castles as dancers was $10,000, and that in consideration of said assignments the capital stock should be issued thirty-three shares to each of the Castles and thirty-four to Ansaldi. The capital stock was subsequently so issued without further consideration. It appears that the rent for the first month had been advanced for the Castles and Ansaldi by one Zimmerman and that it was repaid to him on the 7th day of December, 1913, from the earnings of the company. It was stipulated that the defendants were repaid from the earnings of the company any moneys paid out or advanced by them for it. The plaintiff, representing L. Barth & Sons, executed the bill of sale of the furniture and equipment of the restaurant to the company on or about the 4th day of December, 1913, and in consideration therefor it executed a chattel mortgage thereon to him

for $47,251.16, which the evidence shows and the court found was the value of the property at that time. It was provided that the chattel mortgage should also cover any further equipment installed in the future, and that the company should make daily payments of $33.34 on account of principal *during the months the restaurant was open,* and should pay interest on the principal on the last day of each month. These provisions plainly show that it was not contemplated that the restaurant should be open all the year. The company began business on the 4th day of December, 1913, and continued to operate the restaurant until the 30th day of April, 1914, during which time the individual defendants and Ansaldi remained its sole stockholders, directors and officers. At a meeting of the directors held on the 15th of December, 1913, a resolution was unanimously adopted providing that each of the three directors, officers and stockholders should, until further notice, receive a salary of $500 a week to " cover all services as officers and such other services as shall be rendered to the company according to its needs," and on the 11th day of January, 1914, a resolution was unanimously adopted by the directors increasing their salaries to $1,000 each per week after February 1, 1914. Pursuant to these resolutions each of the three directors, officers and stockholders drew the sum of $10,833.33 for the period *prior* to April first, and Ansaldi drew the further sum of $500 on account of expenses preliminary to the organization of the company. At the time the restaurant closed on April 30, 1914, the company had paid on account of principal on the indebtedness secured by the chattel mortgage the sum of $4,900, which was all that had become due, but it made no payment of interest. The payment of interest due at the end of December was demanded shortly thereafter, and the payment of the interest which subsequently fell due was likewise demanded, but none of the interest was paid.

At the time the restaurant closed there was sufficient cash on hand to pay the current obligations; and all indebtedness of the company other than its indebtedness to the plaintiff secured by the chattel mortgage, with the exception of an item of $23.87 for unclaimed wages, had then been paid. It was intended at the time to close the restaurant only for

the summer months and to open it again in the fall, but on the 3d day of September, 1914, the attorney for the company surrendered the keys and delivered possession of the plant and equipment to Barth, and the plaintiff having elected under the chattel mortgage to declare the whole amount due on account of non-payment of interest and the subsequent monthly installments of principal, sold the property covered by the mortgage at public auction, without bringing a fore-closure action, on the fourteenth of September, and bid in the property for the sum of $20,000, which was the best price obtainable therefor, leaving a balance of $22,557.36 of principal together with interest thereon due and unpaid on the mortgage debt, for which a judgment was subsequently recovered against the company. The judgment recovered in this action against the individual defendants is for the deficiency. The evidence shows that the ordinary depreciation in value of property such as was covered by the mortgage while in use is at the rate of ten per cent per annum, and that about twice that amount had been paid to apply on the principal prior to the closing of the business. It appears that the property covered by the chattel mortgage was not new when originally installed in this restaurant, but that it had been in use and had been sold by the plaintiff under chattel mortgages and purchased by him on two former occasions.

Notwithstanding the theory of the action as shown by the complaint, the contention is now made on evidence offered by the plaintiff and received without objection that the defendants received their stock without consideration, that all disbursements made after the demand for the payment of interest on the mortgage which fell due on the 31st of December, 1913, were in violation of the provisions of section 66 of the Stock Corporation Law (Consol. Laws, chap. 59; Laws of 1909, chap. 61), and that the withdrawal of money as salaries by the defendants and by Ansaldi by their authority constituted *an impairment of the capital* and rendered them liable jointly and severally under section 28 of the Stock Corporation Law for restoration of the entire amount drawn by them and by Ansaldi as salaries.

It is claimed in behalf of the appellants that the plaintiff was the only creditor, and the evidence shows not only that

he was the only judgment creditor, but that he was the only creditor with the exception of the small item for unclaimed wages. There is no evidence or finding of fraud or bad faith on the part of the defendants in voting for the distribution of the money as salaries or that the company was insolvent at any time until after it closed the restaurant and the plaintiff elected to declare the entire amount of the indebtedness due. It is to be borne in mind that there has been no distribution of any assets which the corporation had when it incurred the indebtedness to the plaintiff and there is no evidence that the distribution was not made in entire good faith and in the belief that the business would continue to be successful. If others had been employed to perform the services and had been paid therefor it could not be successfully maintained that such contracts and payments would have been illegal. Aside, therefore, from their failure to pay in and retain unimpaired the capital stock it was not unlawful for them to take from the earnings of the corporation a reasonable amount for their services the same as they might lawfully have paid to others. Even where excessive salaries have been voted to themselves, but in good faith and without intent to defraud creditors, by directors, they may be allowed to retain such part thereof as will reasonably compensate them for their services for the performance of which others might have been employed. (See *Carr* v. *Kimball,* 153 App. Div. 825; affd., 215 N. Y. 634; *MacNaughton* v. *Osgood,* 41 Hun, 109. See, also, *Curran* v. *Oppenheimer,* 164 App. Div. 746.) On the assumption that the salary resolutions constituted declarations of dividends, as evidently was intended, still the defendants were authorized to declare dividends out of profits so long as they did not entrench on the capital and being the owners of all the stock they had a right to distribute the surplus profits. (See *Carr* v. *Kimball, supra; Hartley* v. *Pioneer Iron Works,* 181 N. Y. 73; *Groh's Sons* v. *Groh,* 80 App. Div. 85; Morawetz Priv. Corp. [2d ed.] § 440.) That rule of law is conceded, but it is claimed that it is not applicable here owing to the fact that no capital was paid in. That point will be considered after I discuss other questions.

The learned counsel for the respondent does not contend that the judgment may be sustained either on the theory

that the action is brought in the right of the corporation or in the right of the plaintiff individually as a creditor on account of the failure of the stockholders to pay for their stock in violation of section 55 of the Stock Corporation Law, or under section 66 thereof, for having distributed the moneys after defaulting in paying the interest on the mortgage; but he claims that the evidence showing the violations of those statutory provisions sustains the action under section 90 of the General Corporation Law.

It is manifest that the judgment cannot be sustained under section .55 of the Stock Corporation Law, not only for the reason that a violation of that section was not alleged and the complaint was not amended, but for the further reason that the liability of each of the defendants on that theory would in any event be limited by section 56 of the Stock Corporation Law to the capital stock received by him. (See *Ford* v. *Chase*, 118 App. Div. 605; affd., 189 N. Y. 504; *Myers* v. *Sturgis*, 123 App. Div. 470; affd., 197 N. Y. 526; *Jeffery* v. *Selwyn*, 220 id. 77.) It is quite clear under the authorities that the stock was neither issued for cash nor for property contributed by the stockholders, for the contracts which it is claimed afforded the consideration were expressly made for and inured to the benefit of the corporation upon its formation (*Avon Springs Sanitarium Co.* v. *Weed*, 119 App. Div. 566; reversed on dissenting opinion, 189 N. Y. 557; *Herbert* v. *Duryea*, 34 App. Div. 478; affd., 164 N. Y. 595), and in so far as they provided for the rendition of services *in the future* by the three stockholders that element is not a consideration for which the issuance of capital stock is authorized by section 55 of the Stock Corporation Law. (*Stevens* v. *Episcopal Church History Co.*, 140 App. Div. 570; *Morgan* v. *Bon Bon Co., Inc.*, 165 id. 89.) But the defendants were entitled to litigate those questions and any others on which their liability to answer therefor depends and such issues were not presented for litigation by the pleadings. While, therefore, apparently the stock was issued without consideration, for the reasons assigned the judgment as entered cannot be sustained, nor can it be sustained for any amount on that theory. (See *Curran* v. *Oppenheimer*, 164 App. Div. 746.)

I am also of opinion that the judgment cannot be sustained

under section 66 of the Stock Corporation Law on the theory that all disbursements subsequent to the default in paying the interest on the mortgage after demand were in violation of the provisions of that section. Said section 66 provides, among other things, as follows: " No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. * * * Every director or officer of a corporation who shall violate or be concerned in violating any provisions of this section, shall be personally liable to the creditors and stockholders of the corporation of which he shall be director or an officer to the full extent of any loss they may respectively sustain by such violation." The other provisions of that section expressly relate to transfers of property of a corporation which is insolvent or the insolvency of which is imminent and that was not the case here. In *Caesar* v. *Bernard* (156 App. Div. 724, 732) we held that the provisions of section 66 were enacted " to prevent those occupying confidential and fiduciary relations toward corporations from profiting directly or indirectly by information thereby acquired, and to prevent unjust discrimination and preferences among creditors of insolvent corporations, or those bordering on insolvency," and the Court of Appeals affirmed on our opinion (209 N. Y. 570). That section has, therefore, I think, been authoritatively construed as relating to corporations which are financially embarrassed or in danger of so becoming. This company was not financially embarrassed when it made default in the payment of interest on the mortgage. Down to the time it closed the restaurant business for the summer it had sufficient funds with which to pay the interest and all other current obligations and only became financially embarrassed when it suspended business and the plaintiff elected to declare the *entire indebtedness* due and payable. Nor is there any evidence of a *refusal* to pay the interest. It merely appears that the interest was demanded from time to time and that Ansaldi promised to pay it but failed so to do. It cannot

be that this section is to be construed literally as rendering *illegal* every disbursement by a solvent corporation after it has failed to pay an obligation falling within the provisions of the statute. Not only was the action not brought under that section, but it cou'd not be maintained thereunder for the further reason that the liability of directors for disbursing moneys and transferring property in violation of the provisions of that section is given to the creditors and stockholders and is limited to the *loss* sustained by the acts of the directors in violation of the statute. I see no basis for sustaining this judgment on the theory that the plaintiff as a creditor of the corporation sustained a loss equal to the amount of this judgment owing to the distribution of the money as salaries, if such distribution was unauthorized only on the ground that the corporation had failed to pay the interest on the mortgage, for on that theory the distribution would have been lawful, if the comparatively small amount of interest due at the respective times had been paid. (See *Curran* v. *Oppenheimer, supra.*)

The recovery, therefore, if sustainable at all, must be sustained on the theory on which the action was brought, namely, that these disbursements of money made by the directors to themselves as salaries, which for that reason were voidable at the instance of the corporation, may be avoided by its creditors on the ground that the capital of the corporation was thereby impaired in violation of the provisions of section 28 of the Stock Corporation Law, which are as follows: " The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law. In case of any violation of the provisions of this section, the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large upon the minutes of such directors at the time, or were not present when the same happened, shall jointly and severally be liable to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or its

creditors respectively by reason of such withdrawal, division or reduction." The statute was so amended by chapter 354 of the Laws of 1901, which amended section 23 of the former Stock Corporation Law (Gen. Laws, chap. 36; Laws of 1892, chap. 688). I am of opinion that by that amendment a material change was made in the law, for prior thereto the directors were expressly made liable to the corporation and to its creditors for the full amount of "the capital of such corporation so divided, withdrawn, paid out or reduced." It may well be that under the former statute the directors would be liable for the restoration of the full amount of the dividends, but by the amendment I think their liability is confined to the loss sustained by the corporation or its creditors from the declaration and payment of the dividend. No case is cited and I have been unable to find any construing the provisions of the former law or of the statute as it now exists on the precise point as to whether at the time of the declaration and payment of dividends a dividend in some amount would have been authorized, but not to the extent declared. It would, I think, be an unreasonable construction to hold that if directors, acting in good faith and in the belief that the surplus earnings of the corporation warranted it, should declare a dividend amounting to $10,000, which impaired the capital only to the extent of $5,000, they should be compelled to restore the entire amount of the dividend declared. I am of opinion that the purpose of the statute would be subserved in such case by requiring them to restore sufficient of the amount of the dividend declared and paid to make good the impairment of capital. If that be the true construction of the statute, then this judgment cannot be sustained. On the theory that the action is not brought and cannot be sustained as an action to recover the amount of capital which the defendants were obligated to pay on receiving their shares of stock and failed to pay, but merely on the ground of unauthorized dividends, then I think the only importance of their failure to pay for their capital stock is that they were obliged at each time of declaring dividends to leave sufficient from the earnings of the corporation to make good the capital as if they had paid it in. On that theory an accounting is necessary, for the evidence does not show either the value of the assets or the

amount of the liabilities at the respective times when the weekly salaries were paid. The assets and liabilities were only shown by the books and records of the corporation at the end of each month, and it appears by the assets and liabilities thus shown that the entire disbursements for salaries to the directors, officers and stockholders for one month only wholly intrenched on capital and for the other months a surplus was left for capital, but not to the extent of $10,000; and it does not appear that the intrenchment on capital for the entire period aggregated the amount of the recovery. If it did, since there is no other judgment creditor and no objection was taken that the rights of other creditors were involved, a direct recovery in favor of the plaintiff might be sustained. (*Buckley* v. *Stansfield,* 155 App. Div. 735; affd., 214 N. Y. 679; *Cullen* v. *Friedland,* 152 App. Div. 124; *Darcy* v. *Brooklyn & N. Y. Ferry Co.,* 196 N. Y. 99.)

It follows, therefore, that the judgment should be reversed, with costs, and that any findings inconsistent with the views herein expressed should be reversed, and appropriate findings in accordance with these views should be made directing an accounting before a referee to be appointed by the order of this court which should be settled on notice.

SCOTT and SMITH, JJ., concurred; CLARKE, P. J., and PAGE, J., dissented.

PAGE, J. (dissenting):

This action was brought by a judgment creditor of the corporation defendant to compel the individual defendants, directors of the corporation, " to account for their official conduct, including any neglect of or failure to perform their duties, in the management and disposition of the funds and property, committed to their charge " and also to compel them to pay to the corporation or to its creditors, " any money, and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or by other violation of their duties." (Gen. Corp. Law, § 90, subds. 1, 2.)

The bringing of this action by a creditor of the corporation

is expressly authorized by statute. (Gen. Corp. Law, § 91.) .When such an action is brought by a creditor it has been held that it is "'in the nature of a creditor's bill, a search and trace by a diligent judgment creditor for and the enforcement of an equitable lien upon the assets of the corporation that have been distributed by the trustees in violation of law.'" (*Shalek* v. *Jetter*, 171 App. Div. 364.) In the instant case it appears by stipulation that, although the individual defendants and Ansaldi subscribed for $10,000 par value of the stock, the same was issued to them without their paying or giving anything therefor, thus violating section 55 of the Stock Corporation Law. It was further stipulated that they voted to pay themselves in the guise of salaries, but which it is conceded must be treated as dividends, substantially all the net cash receipts of the corporation so long as it conducted business, thus violating section 28 of the Stock Corporation Law, even if the position of Mr. Justice LAUGHLIN is sound that the capital could be made up out of earnings, for the payment to the directors each month reduced the unpledged assets below the limit of $10,000. I do not accept his conclusion that unpaid subscriptions to stock may be paid out of surplus profits, for capital stock of a corporation does not mean its share stock but a fund required to be paid in and kept intact as a basis of the business enterprise and the chief factor in its safety. (*People ex rel. Union Trust Co.* v. *Coleman*, 126 N. Y. 433, 439.) "It is the established law of this State that the capital of a corporation is regarded as a substitute for the personal liability which subsists in private ownerships and as a fund set apart and pledged for the payment of its debts." (*Hazard* v. *Wight*, 201 N. Y. 399, 402.) Until this fund was created the declaration of any dividends would be illegal and a violation of the director's duty for which he would be personally accountable.

To say that surplus profits may be appropriated to the payment of stock subscriptions violates a fundamental distinction; profits are first to be appropriated to pay debts and thus constitute a fund in addition to capital. The payment of the subscription of the shareholder out of the profits of the corporation is an appropriation of the money of the corporation to pay the individual debt of the stockholder.

Furthermore it was proved without objection that before the payment of these dividends the corporation had failed to pay installments of interest due, on the chattel mortgage held by the plaintiff's assignor, although payment thereof had been duly demanded, thus violating section 66 of the Stock Corporation Law.

Mr. Justice LAUGHLIN states these various violations but holds that relief cannot be given for the reasons, *first,* that specific remedies are provided in those sections which the plaintiff must invoke, and *second,* that the facts are not sufficiently alleged in the complaint.

In this, in my opinion, the theory of the action is misapprehended. An action under section 90 of the General Corporation Law is to compel the director to account for his violation of duty. Allegations of several violations do not constitute separate causes of action, but are merely additional specifications of the primary duty violated and give rise to but one cause of action. In this action relief will be given even though for some of the specific acts there exist other and different remedies, even if for some an adequate remedy at law is provided. (*Moran* v. *Vreeland,* 81 Misc. Rep. 664, 672; affd., 162 App. Div. 907, and cases cited.)

In the instant case the complaint contains a prayer for general relief, an answer was interposed, and the facts were either stipulated or proved without objection. Therefore, although the complaint may be justly criticized, yet the facts proved are not in hostility to the cause of action alleged and all might have been properly embodied in the complaint. This case, therefore, comes within the rule declared by the Court of Appeals. " While the complaint is not as full as it should be, still the plaintiffs were entitled to relief upon the facts alleged, and if it had been amended so as to conform to the proof, all deficiencies would have been supplied. There was a prayer for general relief and, after an answer has been interposed, any judgment may be awarded that is warranted by the facts proved and consistent with the facts alleged, even if it does not precisely conform to the pleader's theory of the action, provided it is not hostile thereto." (*Rogers* v. *N. Y. & T. L. Co.,* 134 N. Y. 197, 219.)

The plaintiff is the only creditor and the amount wrongfully

taken from the corporation by these defendants is more than sufficient to pay the plaintiff's claim; therefore, there was no necessity for an accounting or the appointment of a receiver.

The judgment should be affirmed, with costs.

CLARKE, P. J., concurred.

Judgment reversed, with costs, and accounting ordered before a referee as directed in opinion. Order to be settled on notice.