NORTHWESTERN MUT. LIFE INS. CO. *v.* COTTON EXCHANGE REAL ESTATE CO. *et al.*

*(Circuit Court, E. D. Missouri, E. D.   April 6, 1891.)*

1. CORPORATION—STOCKHOLDERS' LIABILITY—PAYMENT OF STOCK IN PROPERTY—OVER-VALUATION.

A bill by a judgment creditor of a corporation, which charges that defendants are the stockholders and directors of the company; that the stock therein of $125,-000 was paid by the conveyance of a lot and building suitable for its business, at a valuation of $200,000, though it was at no time worth more than $157,000; that the bonds of the company secured by mortgage on the building were issued to defendants to make up the deficit; that defendants were at the time stockholders and directors in the real estate company which owned the building and lot and made the conveyance, and were personally aware of the overvaluation, and benefited by it,—sufficiently charges fraud, although no actual fraud is alleged, and a demurrer thereto will be overruled.

2. SAME—NOTICE.

Nor is it a valid ground of objection that the bill fails to charge that complainant became a creditor of the company in ignorance of the way in which its stock was floated as paid up, for knowledge of such facts on its part is a matter of defense, to be pleaded by way of answer.

In Equity.   On demurrer to bill.

Complainant is a judgment creditor of the Cotton Exchange Real Estate Company, and as such sues the individual defendants, who are its stockholders, to compel them to pay certain amounts alleged to be unpaid on the stock by them held in the company. Defendants demur to the bill. The following is a brief synopsis of the material allegations of the bill: In April, 1882, there was a corporation in existence styled the "St. Louis Cotton Exchange Building Company," hereafter called the "Building Company," of which the defendants William T. Wilkins, Leonard Matthews, and William L. Black were the sole stockholders and directors. The Building Company then owned a lot in the city of St. Louis, Mo., and had erected a building thereon, which was then nearly completed, and was intended to be used as a cotton exchange, and for offices, stores, etc. The total cost of said lot and building when completed was $157,319.76. On March 30, 1882, the above-named directors of the Building Company organized the Cotton Exchange Real Estate Company, the defendant herein, and hereafter called the "Real Estate Company," with a capital stock of $125,000, divided into 1,250 shares of $100 each. This latter company was organized to buy the property of the Building Company. Its stock (1,250 shares) was all issued to the persons who were stockholders and directors of the Building Company, so that the stock of both corporations was owned by the same persons, and both companies were controlled by the same

board of directors.    The Building Company paid for the stock of the Real Estate Company, which had been issued to the directors of the Building Company, by conveying its lot and building to the Real Estate Company at an agreed valuation of $200,000.    For the difference between the par value of the stock, to-wit, $125,000, and the agreed valuation aforesaid, the Real Estate Company executed and delivered to the Building Company bonds to the amount of $75,000, which were secured by a first mortgage on the property so as aforesaid purchased and conveyed to it.    Then the directors of the Building Company divided among themselves, in proportion to their several holdings of stock, all of the assets of the Building Company, including the bonds received from the Real Estate Company;— the three individual defendants herein, to-wit, Wilkins, Matthews, and Black, each receiving on such division something over $27,000.    Afterwards Wilkins, Matthews, and Black sold the bonds of the Real Estate Company, which they had acquired as aforesaid, to the complainant.    The interest thereon was paid for a short time, but eventually there was a default, and the mortgage securing the bonds was foreclosed.    At the mortgage sale the complainant herein bought the mortgaged property for $50,000.    For the balance due on the bonds the complainant has since recovered judgment against the Real Estate Company in the sum of $35,983.50, which is the judgment that forms the basis of this suit.    It is averred in the bill that by reason of the transactions aforesaid the par value of the stock of the Real Estate Company has not been paid; that the subscriptions to its capital stock are unpaid to the extent of $50,000, that being about the difference between the par value of the stock and bonds of the Real Estate Company and the value of the lot and building conveyed to it by the Building Company; that the lot and building conveyed to the Real Estate Company to pay for its stock were at no time up to the present day worth, and could not at any time have been sold for, more they they cost, as the defendants well knew; and that said lot and building were not worth the value placed upon them in the transfer to the Real Estate Company, as the said defendants also well knew.

*Lee & Ellis*, for complainant.

*Silas B. Jones* and *Pollard & Werner*, for defendants.

THAYER, J., (*after stating the facts as above.*)    The sufficiency of the bill is questioned on two grounds.    In the first place it is said by one of defendants' solicitors that the bill does not show that the property conveyed to the Real Estate Company in payment for its stock was intentionally overvalued, or the extent of such overvaluation.    Stating the objection in a different form, and in the language of another of defendants' solicitors, it is said that the bill does not show that there was any fraud in the transaction by which the stock was paid for.    I shall concede that under Missouri laws stock in a corporation like the Real Estate Company may be paid for in property, and that this implies a power on the part of the subscriber and the corporation to bargain and agree as to the value of property exchanged for stock, and that such agreements as to

value are binding between the stockholder and the corporation, and that they are also binding between the stockholder and a corporate creditor, unless it appears that the property has been intentionally valued at a sum considerably in excess of its reasonable value. I shall also concede that a stockholder cannot be successfully proceeded against by a corporate creditor as a holder of unpaid stock, merely because property given in exchange for stock does not ultimately prove to be as valuable as it was supposed to be at the time of the exchange; in other words, where stock may be paid for in property, a stockholder cannot be charged because of an honest mistake of judgment. It is also true, no doubt, that when a person becomes a creditor of a corporation with full knowledge that its stock has been paid up in property at an overvaluation, he is precluded by such knowledge from afterwards asserting that the stock of such corporation is not fully paid. One who voluntarily gives credit to a corporation under such circumstances does so with his eyes wide open, is not defrauded, and ought not afterwards to be heard to complain. These general propositions seem to have been settled by the supreme court of the United States, and must be accepted as the law for present purposes. *Coit* v. *Amalgamating Co.*, 119 U. S. 343, 7 Sup. Ct. Rep. 231, 14 Fed. Rep. 12; *Bank* v. *Alden*, 129 U. S. 372, 9 Sup. Ct. Rep. 332; *Burke* v. *Smith*, 16 Wall. 390.

But, conceding the law to be as above stated, I am nevertheless of the opinion that the first objection to the bill is untenable. As I construe it, the bill avers that the lot and building conveyed to the Real Estate Company in exchange for stock was at no time worth more than $157,-319.76, and that the directors of the Real Estate Company, who were also the persons to whom its stock was issued, and who were personally benefited by the overvaluation, were aware of that fact; nevertheless, as the bill further shows, these same directors, with knowledge that the property was not worth to exceed the sum aforesaid, accepted it for and in behalf of the corporation at a valuation of $200,000, and issued therefor to themselves all of the stock of the corporation of the par value of $125,000, and, in addition, caused to be executed and delivered bonds of the corporation of the value of $75,000, which they shortly afterwards divided among themselves, acting in that matter as directors of the Building Company. It appears to the court that the bill not only shows an intentional overvaluation of property by the directors while acting in the dual capacity of vendors and purchasers, but that it also shows with sufficient certainty the extent of the overvaluation, and the further fact that the directors made large personal gains by means of the alleged overvaluation.

With reference to the contention that the bill shows no actual fraud in the transaction, it is sufficient to say that the court regards an intentional overvaluation of property to the extent, and made under the circumstances, disclosed by the bill as fraudulent, in the sense that the complainant is bound to allege and prove fraud. The law regards such a transaction as constructively fraudulent so far as corporate creditors are concerned; or, to state the proposition in a different form, the pay-

ment of a stock subscription in such manner and under such circumstances is invalid, and not binding on a creditor of the corporation; and, where the law determines the quality of a transaction described in a pleading, it is unnecessary to aver that it was unlawful or fraudulent.

The second objection to the bill is that the complainant should have averred that it became a creditor of the Real Estate Company in ignorance of the fact that its stock had been paid up in the manner hereinbefore stated. It is conceded by counsel for defendants that they have found no case holding that it is necessary for a complainant to make such an averment in a bill of this character. They rely, however, on certain general expressions found in *Coit* v. *Amalgamating Co.*, *supra.* An examination of that case shows that it was submitted on the bill, answer, and proofs. The case was decided upon the facts appearing in evidence, and nothing was said that can be regarded as authoritative concerning the question of pleading raised in the case at bar. No question of pleading was presented by the record in that case. On the other hand, the very objection made to the bill by defendants' counsel was made by demurrer to a similar bill in the case of *Gogebic Inv. Co.* v. *Iron Chief Min. Co.*, 47 N. W. Rep. 726, (Sup. Ct. Wis.,) and was overruled after full consideration. In the absence of any adjudications on the subject, I should entertain no doubt that it is for the defendants to allege and prove, if it be a fact, that the complainant became a creditor of the Real Estate Company with full knowledge of the manner in which its stock had been floated as fully paid. That is defensive matter. Complainant makes out a *prima facie* case in its own favor by stating the manner in which the individual defendants acquired the stock of the Real Estate Company. It shows that the pretended payment for the stock was not in fact full payment, and that the pretended cancellation of the stock liability in the mode described is not binding on corporate creditors. There is no presumption that the complainant was aware of the wrongful manner in which the stock liability had been canceled when it became a creditor of the corporation, nor do the averments of the bill raise such an inference. It is therefore the duty of the defendants to show that the acts complained of were not harmful to the complainant, and that it has no right to complain, because it had knowledge of the same before it dealt with the Real Estate Company.

The demurrer is overruled.