FIRST TRUST CO. v. ILLINOIS CENT. R. CO.   SAME v. CHICAGO & N. W.
RY. CO.   SAME v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   March 3, 1919.)

Nos. 5062–5064.

1. CORPORATIONS ⬦⟳376—POWERS—PURCHASE OF OWN STOCK.
    In the absence of statutory or charter restriction, a corporation has in-
    herent power to purchase its own stock.

2. CORPORATIONS ⬦⟳542(1)—PURCHASE OF OWN STOCK—VALIDITY.
    Where a purchase of its own stock by a corporation is made when it is
    insolvent, or if such transaction renders it insolvent, such purchase is
    voidable as to existing creditors, and as to subsequent creditors who be-
    came such without notice and in reliance on its former solvency, and if
    notes or bonds are given in exchange for the stock, they will be subordi-
    nate to the claims of such creditors, but not to claims of subsequent cred-
    itors with notice.

Appeal from the District Court of the United States for the North-
ern District of Iowa; Henry T. Reed, Judge.

Suit in equity by the First Trust Company, as trustee, against the
Crooked Creek Railroad & Coal Company, in which the Illinois Cen-
tral Railroad Company, the Chicago & Northwestern Railway Com-
pany, and the Northern Pacific Railway Company separately inter-
vened.   From the decree for interveners, complainant appealed.   Re-
versed in part (252 Fed. 965, —— C. C. A. ——), and interveners pe-
tition for rehearing.   Denied.

F. H. Helsell and Charles A. Helsell, both of Ft. Dodge, Iowa, for
petitioner Illinois Cent. R. Co.

James C. Davis, of Chicago, Ill., for other petitioners.

PER CURIAM.   The three grounds upon which the appellees in
their petition for rehearing insist that their claims are entitled to be
paid in priority to the mortgage bonds are:

(1) That the bonds were issued in payment for stock of the cor-
poration at a time when it was insolvent, or at least that the trans-
action rendered it insolvent, and that for this reason the bonds are
to be subordinated to the claims of all creditors, both existing and
subsequent.

(2) That the bondholders were in control of the corporation when
the claims of the interveners originated, and for that reason the claims
should be paid before the bonds.

(3) That there was a diversion of the corporate income, which should
have been devoted to the payment of interveners' claims.

We do not think it necessary, as to the second and third grounds,
to say anything in addition to what was said in the opinion filed.   As
to the first ground, in view of a seeming change on the part of coun-
sel for appellees from their former position, that the mortgage in
question was ultra vires and absolutely void, to their present position,
that the mortgage and bonds, though valid, are subordinate to the
claims of creditors, both existing and subsequent, we may add to what
was said in the opinion the following:

⬦⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] It is well settled by the decisions of this court that, in the absence of statutory or charter restriction, a corporation has inherent power to purchase its own stock. Burnes v. Burnes, 137 Fed. 781, 70 C. C. A. 357; Sanford v. Bank, 238 Fed. 298, 151 C. C. A. 314. It is not claimed that there is any prohibition in the charter of the Crooked Creek Railroad & Coal Company, and under the decisions of the state of Iowa it would seem clear that there is nothing in the statutes of that state which prohibits such a purchase. Rollins v. Shaver, 80 Iowa, 380, 45 N. W. 1037, 20 Am. St. Rep. 427; Tierney v. Butler, 144 Iowa, 553, 123 N. W. 213.

[2] It is equally well settled that, where the purchase of its own stock by the corporation is made when the company is insolvent, or if such transaction renders it insolvent, such sale is voidable as to existing creditors, and if notes or bonds are given by the corporation in exchange for the purchase of its stock, such notes or bonds will be subordinate to the claims of existing creditors in the distribution of the assets of the corporation.

The foregoing proposition is also true as to subsequent creditors of the corporation, who become such without notice of the purchase of its own stock by the corporation, but relying upon the supposed previous solvency and unimpaired stock. Coleman v. Tepel, 230 Fed. 63, 71, 144 C. C. A. 361; Atlanta & Walworth Ass'n v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42; M. V. Moore & Co. v. Gilmore, 216 Fed. 99, 132 C. C. A. 343; In re S. P. Smith Lbr. Co. (D. C.) 132 Fed. 618; In re Fechheimer Fishel Co., 212 Fed. 357, 129 C. C. A. 33; Hamor v. Taylor-Rice Co. (C. C.) 84 Fed. 392; Maryland Trust Co. v. Bank, 102 Md. 608, 63 Atl. 70.

But the appellees in the present case do not fall within either of the classes mentioned. At the time when the corporation purchased its stock and issued bonds therefor, all of the debts of the corporation were paid (except, of course, to the bondholders). The interveners are therefore subsequent creditors. But this is not all. The mortgage itself recited:

"Whereas, it now appears necessary and proper for the purpose of purchasing 1,125 shares of its capital stock from its present shareholders, * * * the railroad company has now resolved to issue * * * bonds."

This mortgage was recorded on the 4th day of January, 1911, and before any of the interveners became creditors. This was notice to all the world of the purchase of its own stock by the corporation. There is no fraud established, and no claim that the corporation made any representations contrary to the recital just quoted from the mortgage.

The distinction between subsequent creditors with notice and subsequent creditors without notice, who have become such relying upon appearances which were in fact false and deceitful, is well recognized in various classes of cases; for example, in suits by creditors to recover against stockholders for balance on stock which had been issued as fully paid, when in fact not fully paid, or on stock which had been issued for property taken at excessive value, or where dividends had

been paid out of capital by a corporation, solvent at the time, but which afterward became bankrupt. N. W. Mut. Life Ins. Co. v. Cotton Exch. Co. (C. C.) 46 Fed. 22, 24; Rickerson Mill Co. v. Farrell Co., 75 Fed. 554, 560, 23 C. C. A. 302; Cunningham v. Holley Co., 121 Fed. 720, 58 C. C. A. 140; State Trust Co. v. Turner, 111 Iowa, 664, 82 N. W. 1029, 53 L. R. A. 136; Bank v. Gustin Minerva Mining Co., 42 Minn. 327, 334, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. Rep. 510; Hospes v. N. W. Mfg. Co., 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637; Downer v. Union Land Co., 113 Minn. 410, 418, 129 N. W. 777; Mackall v. Pocock, 136 Minn. 8, 161 N. W. 228, L. R. A. 1917C, 390.

In the case at bar the interveners were subsequent creditors with notice of the impairment of the capital stock, and for that reason cannot claim priority over the bondholders.

The petition for rehearing is denied.