## In re BAY RIDGE INN, Inc.
## VALLOMY et al. v. SMITH.
### No. 248.

Circuit Court of Appeals, Second Circuit.
July 12, 1938.

Henry Levis, of New York City, for petitioners-appellants.

Walter B. Milkman, of Brooklyn, N. Y., for respondent-appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Bay Ridge Inn, Inc., filed a voluntary petition in bankruptcy on January 16, 1937, and was adjudicated a bankrupt thereon. On September 30, 1936, it made a mortgage to its three stockholders, namely, Camille

Vallomy, Frank Turino and Bruno Mandraccia, the petitioners herein, who owned its entire capital stock in equal proportions consisting of 45 shares of the aggregate par value of $4,500.

The above stockholders, each owning fifteen shares of the corporate stock, entered into a contract with one Valerio on August 31, 1936, to sell their stock to the latter. The corporation was not a party to the contract, nor was it to receive any part of the consideration. The price for the stock was $5,025, the valuation of the business. The price, to the extent of $3,000, was to be paid in cash, but to the extent of $2,025 by notes of the corporation payable to the sellers and secured by a chattel mortgage on the corporate lease and fixtures. In respect to the $2,025 of the purchase price the contract provided as follows:

"d. The balance of the Two thousand and twenty-five ($2,025.00) dollars to be paid by the delivery and execution to the sellers of the promissory notes of the purchaser totalling Two thousand and twenty-five ($2,025.00) dollars payable at the rate of One hundred and seventy ($170.00) dollars per month for eleven (11) months and One hundred and fifty-five ($155.00) dollars the twelfth month, which notes are to be secured by a chattel mortgage on the lease and fixtures now held by the Bay Ridge Inn, Inc."

The sale was closed on October 2, 1936. The chattel mortgage was executed by Turino as president of the corporation and was to secure the promissory notes of the corporation above mentioned which were also signed by Turino as president. A resolution of the Board of Directors composed of Turino, Vallomy and Mandraccia, who were also the sole stockholders, was adopted September 30, 1936, authorizing the execution of the mortgage and the delivery of the notes and mortgage to Turino, Vallomy and Mandraccia. Although the resolution stated that the notes and mortgage were to be in consideration of loans by these stockholders to the corporation, it is conceded that there were no such loans and that the notes and mortgage were merely given on behalf of those who were selling their stock and sought thereby to obtain payment of $2,025 of the purchase price owed to them by the purchaser under the contract. Certain cash payments were made in accordance with the contract, but for the purpose of closing the parties

caused another mortgage upon the corporate assets to be made by Bay Ridge Inn, Inc., in order to raise $1,200 of the necessary cash payments. The purchaser Valerio accomplished this by obtaining a loan of $1,200 from one Adelson who gave his check drawn to the order of the corporation. Though the corporation was bound to repay the loan to Adelson and had mortgaged its property for that purpose, Adelson's check was upon delivery immediately endorsed by Vallomy, Turino and Mandraccia in the name of the corporation to the order of their attorney who deposited it in his account and divided the proceeds among the stockholders after deducting his fees. Thus the corporation obtained no benefit from the $1,200 and as between it and the stockholders who received the proceeds the loan was without consideration. At the time of closing the transaction there was added to the original contract price of $5,025 for the stock, the sum of $172.72 to purchase the merchandise of the corporation then on hand, and $150 to purchase the cabaret license which it owned, making the total purchase price and the gross valuation of the assets $5,347.72.

The liabilities and assets of Bay Ridge Inn, Inc., at the time of closing were as follows:

| | |
|---|---:|
| Capital stock | $4,500.00 |
| Merchandise creditors | 536.08 |
| Adelson mortgage | 1,200.00 |
| Total liabilities | $6,236.08 |
| Valuation of assets | 5,347.72 |
| Deficit | $ 888.36 |

It is apparent from the foregoing that before the notes and chattel mortgage for $2,025 were delivered by the corporation to the stockholders the aggregate amount of the debts and share liability was substantially greater than the assets. Upon the delivery of the notes and chattel mortgage for $2,025 the excess was about $3,000.

After the sale the corporation continued business under the control of Valerio until it was adjudicated bankrupt on January 16, 1937. Thereafter the lease and fixtures were sold free and clear of the lien of the mortgage. The mortgagees thereupon petitioned the District Court for an order that they be paid the balance of $1,515 which still remained due on the mortgage at the time of adjudication. Judge Galston denied the petition on the ground that the

mortgage was invalid under Section 58 of the New York Stock Corporation Law, Consol.Laws, c. 59, and from his order this appeal was taken. We think that it was right and should be affirmed.

That section reads as follows:

"§ 58. *Dividends.* No stock corporation shall declare or pay any dividend which shall impair its capital or capital stock, nor while its capital or capital stock is impaired, nor shall any such corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number of its shares or of its capital or capital stock, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be. * * * *"

The question on which the case turns is whether Section 58 applies. It is contended by the appellants that it does not because the mere execution of the chattel mortgage for $2,025 was not a distribution of assets such as the section forbids. In Brooklyn Trust Co. v. Jesper, 248 App.Div. 896, 290 N.Y.S. 642, it appears to have been thought that the making of a mortgage by a corporation when its capital is impaired will at once render the mortgage invalid as against creditors. This would seem to be the correct view of the situation here. Where the stockholders imposed a lien upon corporate assets for their own benefit and to secure payments on sales of their stock, they were in effect paying a secret dividend to themselves in derogation of the rights of present and future creditors and contrary to the terms of Section 58. Even if this be an incorrect interpretation of the section, the petitioners here are seeking payment of the mortgage out of corporate assets where the corporation received no consideration therefor. This cannot be sanctioned in a case where the corporation has become insolvent and has unsecured liabilities of over $4,500 and liabilities in excess of its assets of approximately $4,000.

The corporate stock of a corporation is a fund for the ultimate security of all its creditors both present and future. It, therefore, makes no difference whether the creditors existing at the time the contract for the sale of the stock was closed and the chattel mortgage was executed have since been paid off. There were creditors at the time of the adjudication in bankruptcy having claims of more than $4,500 and the mortgage cannot be paid without depleting the fund intended for their security. Small v. Sullivan, 245 N.Y. 343, 345, 350, 157 N. E. 261; German-American Coffee Co. v. Diehl, 216 N.Y. 57, 109 N.E. 875; Williams v. Western Union Telegraph Co., 93 N.Y. 162, 187, 188; Irving Trust Co. v. Gunder, 234 App.Div. 252, 254 N.Y.S. 630; Cottrell, Trustee, v. Albany Card & Paper Mfg. Co., 142 App.Div. 148, 150, 126 N.Y.S. 1070.

If the making of the mortgage by the corporation itself violated Section 58 of the Stock Corporation Law and was an unlawful distribution thereunder, as seems to be indicated by Brooklyn Trust Co. v. Jesper, 248 App.Div. 896, 290 N.Y.S. 642, the petition was properly denied. In any event, however, the payment sought by the mortgagees out of the proceeds of the mortgaged property would impair the capital and transgress the statute. Whether, therefore, the mortgage be void ab initio or the payment sought under it would transgress Section 58, the order of the court below was right.

The suggestion that Section 58 should not be applied because the mortgage was duly filed and creditors had constructive notice of the lien created thereby is without merit. On its face the mortgage indicated a consideration moving to the corporation. Indeed the resolution only authorized the corporation to borrow the $2,025 from the petitioners and to execute the mortgage as security for such a loan. The loan was never made and the mortgage was used not to obtain funds for the corporation, but only to give the mortgagees security when they sold their stock. The record gave no notice to creditors of what actually occurred. Creditors who examined the record would have had reason to suppose that the corporate assets were augmented by the amount of a loan of $2,025, instead of being depleted by payments to the mortgagees.

We hold that the lien of the chattel mortgage on the proceeds of sale in the hands of the trustee is invalid and that the petition was properly denied.

Order affirmed.