The HURON MILLING COMPANY,
Plaintiff-Appellee,

v.

Elihu HEDGES, Defendant-Appellee.

No. 245, Docket 24340.

United States Court of Appeals
Second Circuit.

Argued March 12, 1958.

Decided April 28, 1958.

Harris, Beach, Keating, Wilcox & Dale, Rochester, N. Y. (Edward R. Macomber, Rochester, N. Y., of counsel), for plaintiff-appellee.

Branch, Whipple, Moot & Branch (John Branch, Rochester, N. Y., of counsel), for defendant-appellant.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and BRENNAN, District Judge.

BRENNAN, District Judge.

This litigation challenges the propriety of the action of a director of a corporation in voting that the corporation purchase his own stock and the stock of another at a time when it is alleged that the payment of the purchase price of said stock constituted an impairment of its capital. The action is based principally upon the provisions of Section 58 of the Stock Corporation Law of the State of New York, McKinney's Consol. Laws, c. 59 although it is claimed that the purchase, above referred to, also constituted a violation of Section 60 of the New York General Corporation Law, McKinney's Consol.Laws, c. 23 and Section 664 of the New York Penal Law, McKinney's Consol.Laws, c. 40. All of the above sections of the New York Law are referred to in the complaint as constituting the legal bases for this action. The essential facts affording a background for this decision are set out below.

Pyramid Process Company, Inc., hereinafter referred to as Pyramid, is a domestic corporation whose principal office is located at Rochester, N. Y. It engaged principally in the manufacture of wallpaper paste and related products. The Huron Milling Company, hereinafter referred to as Huron, is a Michigan corporation with its principal office located in that state. It apparently was engaged in the same type of business as was Pyramid to which it sold its products. The two corporations maintained a more or less continuous business relationship over a period of years. Defendant Hedges was the chairman of the board of directors of Pyramid from July 6, 1951 to June 18, 1952 and together with one, Kappelman, owned the majority of the common stock of Pyramid and had voting control.

In July of 1951, Huron loaned to Pyramid $20,000 which was secured by a mortgage on real property. On June 18, 1952, the real property was sold and from the purchase price thereof, Pyramid paid to Huron the sum of $10,000 to apply upon the loan, leaving a balance due thereon of $10,000 and the further sum of $13,635 due on an open account. On that date, Hedges, then a member of the board of directors of Pyramid, at a meeting of the board, voted in favor of a resolution authorizing Pyramid to purchase from him his total stock interest in the corporation, consisting of 2102 shares of common stock, for the sum of $7270. On the same occasion, Hedges voted in favor of a resolution authorizing the purchase by Pyramid of 1357 shares of its stock, then owned by Kappelman for a price of $4730. Pursuant to the above resolutions, which were adopted, the stock was so purchased and the price therefor paid by Pyramid on June 20, 1952.

On September 16, 1952, a new note in the principal sum of $10,000 was executed by Pyramid payable to Huron. This note was given in consideration of the cancellation of the prior note of $20,-000 representing the loan of 1951. The new note recited the fact that $10,000 had been paid upon the 1951 note and also recited that same was given in consideration of the discharge of a mortgage on the real property of Pyramid. The new note also contained provisions to the effect that Pyramid would purchase its entire paste requirements, except for emergency purchases, from Huron. No restriction as to the price which might be charged for such paste was contained in the instrument.

On April 30, 1953 a judgment by confession was entered in the Monroe County Court in favor of Huron and against Pyramid in an amount of $15,353.88. It is undisputed and the trial court found that "The confession judgment is based on a $9500 balance due, with interest, on a $10,000 note dated September 16, 1952, and about $5000 on open account indebtedness, with interest, for goods delivered to Pyramid by the plaintiff (Huron) subsequent to the date of the note and pursuant to the conditions of the note." Execution was issued to the Sheriff of Monroe County and same was returned unsatisfied.

The crux of the action is found in Huron's contention that the purchase of its own stock by Pyramid and the payment of $11,990, pursuant to the resolution of June 18, 1952, constituted an impairment of its capital in violation of the statute, thereby creating the liability sought to be imposed. The capital structure and financial condition of Pyramid at the time of the purchase then becomes important in the disposal of this litigation.

It is undisputed that at the time the defendant became a director of Pyramid and prior thereto the capital structure of the corporation was made up of three classes of outstanding stock—to wit: preferred with a par value of $100 per share; common with no par value and having voting rights; and common having no par value and no voting rights. It is also undisputed that the dollar capitalization of Pyramid, represented as above, aggregated the sum of $67,350.

At a meeting of the board of directors, held July 6, 1951, a resolution was offered to the effect that it was deemed advisable that there be a recapitalization of the stock of the corporation by the issuance of one share of voting common stock for each share of the then outstanding stock in each of the above classes. The resolution was adopted and was ratified by the stockholders at a meeting held August 3, 1951. A certificate, amending the original certificate of incorporation showing the above action, changing the existing shares of stock to shares without par value, was executed August 9, 1951 and filed with the Secretary of State on August 13, 1951. It is to be noted that the resolutions, above referred to, and the certificate of amendment did not purport to change the capitalization of the corporation. However, in the financial records of the corporation, the newly issued shares of stock were carried at a stated value of $1 per share and the total capital stock was considered as $4,620 representing $1 per share for the newly issued stock. The action above taken was treated in the books of the corporation as creating a reduction in capital, thereby creating a capital surplus of $62,730.

■ The Pyramid Company had at the times pertinent here operated at a loss, accumulating a deficit from operations at the end of 1950 of approximately $25,000. In 1951, an additional loss of some $17,000 is shown. At the end of that year, these losses, together with a writeoff on machinery and equipment, were deducted from the paper surplus created by the alleged reduction in capital as above set forth. This method of accounting turned an operating deficit of about $42,000 and a depreciation item or writeoff of machinery, tools, etc. of about $17,000 into a surplus of about $8,000 simply by assuming that the capital stock was reduced from $100 par to $1 par.

The trial court rightfully rejected the action above referred to as accomplishing a reduction of capital and found as a fact that on June 18, 1952 the capital of the corporation was $67,350. The finding is not seriously questioned on this appeal. Pyramid, being a creature of statute, is governed by the applicable provisions of the law of the State of New York. The failure to comply with the provisions of Sections 35, 36 and 37 of the New York Stock Corporation Law, foreclosed a change in the capital structure. Sutherland v. Olcott, 95 N.Y. 93. The use by the court below of the above figure as constituting the capital liability of Pyramid was entirely correct.

■ The argument is advanced that the note of September 16, 1952 and the agreements made a part thereof, upon which the confessed judgment is at least partially based, is void as against public policy in that it violates anti-trust statutes. The argument advanced is somewhat vague. The cases cited are readily distinguishable. The agreement essentially provided for the purchase by Pyramid from Huron of its paste requirements. No price was fixed. The agreement is therefore construed as one in which the buyer must pay a reasonable price which in turn is based upon the

market or current rates. A. M. Webb & Co. Inc. v. Robert P. Miller Co., 3 Cir., 157 F.2d 865, N.Y. Personal Property Law, McKinney's Consol.Laws, c. 41, Sec. 90. The illegal fixing of prices is not involved.

The lower court found on sufficient evidence that the exclusive purchase provisions of the note were inserted as collateral to replace the real estate which had been sold in June 1952 and did not restrict or tend to restrict competition in interstate commerce. The primary purpose of the document was to extend the life of the loan and provide security therefor. No evidence was offered to show that the agreement had any other purpose. If the agreement be considered as a requirements contract, it is not illegal *per se*. See cases cited in United States v. American Can Co., D.C., 87 F.Supp. 18, at page 31. Unreasonableness of the restraint is a question of fact to be decided according to the existing circumstances. It has been decided here adversely to defendant's contention.

The theory underlying Section 58 of the New York Stock Corporation Law and its predecessors is that "The capital stock of a corporation is intended as a fund for the ultimate security and payment of all of its creditors, both present and future." Small v. Sullivan, 245 N.Y. 343, at page 350, 157 N.E. 261, at page 262. The controversy here is well within the limits of the trust fund theory which is discussed in Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 2 Cir., 109 F.2d 924. Plaintiff's burden then is to establish that the transaction in question impaired, invaded and reduced such fund to its damage.

Using the book entries of the amount of the liabilities and the value of the assets, plaintiff prepared and offered in evidence balance sheets showing in detail the financial condition of Pyramid on June 18, 1952 when the resolution to purchase the stock was adopted and on June 20, 1952 when the transaction was closed by the payment of the purchase price. The items thereof and the figures contained therein are not in dispute and a restatement of same is unnecessary to this decision. It is sufficient to say that the lower court found that on June 18, 1952, prior to the stock purchase of that date, the liabilities, including capital, exceeded the value of the assets by $46,032.11. The capital of the corporation was considered in the above balance sheets as $67,350. The same exhibits also showed that on the same date the liabilities, including capital, exceeded the assets by $242.75, even if the capital be taken at $4,620 as carried on the books of the corporation at the reduced valuation of one dollar a share as per the amendment of the certificate of incorporation of August 9, 1951. The lower court also made a finding as last indicated above.

It follows from the above that Pyramid was insolvent in the sense that its liabilities exceeded its assets on the date the defendant voted to have it purchase its own stock. Its condition did not materially change on June 20, 1952, the date the transaction was closed. It had no surplus from which the payment could be made. Necessarily such payment impaired capital in the full amount thereof. Liability follows since it is plain that the defendant, an educated and experienced businessman at all pertinent times, had actual knowledge of the financial condition of the corporation.

Defendant argues rather weakly that since the actual value (Randall v. Bailey, 288 N.Y. 280, 43 N.E.2d 43), rather than the book value, of the assets and liabilities must be established in order to show a deficit or capital impairment that reliance upon the balance sheet alone is insufficient. Certainly the books of a corporation which purport to show assets and liabilities may be relied upon as *prima facie* evidence of items and the valuations placed thereon. United States v. Freeman, 7 Cir., 167 F.2d 786. No contradictory evidence was offered. Pursuing this argument, defendant urges that such items as organiza-

tion expense and machinery, both items having been entirely charged off on the books of the company, should have been valued as assets in determining the question involved. Pyramid considered the items without value. In fact, there is no showing that the machinery was even in existence. It is also urged that a list of Pyramid's customers was also a valuable asset which was ignored. This is pure argument without factual basis, as is the contention that a tax loss, resulting from deficits in earnings, had an asset valuation, since such a loss would be valuable only in the event of a corporate merger. None of the above items were included in the books of the corporation as possessing value and no evidence was offered showing that any such item was capable of a money valuation. Plaintiff is not required to search out assets, the existence of which are unknown and in any event their total valuation would not change the result.

The remaining contention is that Huron is barred from a recovery because it elected to become a creditor with notice of the illegal purchase of the stock on June 18, 1952. That such a principle of law is recognized both in federal and state decisions is undoubtedly correct. First Trust Co. v. Illinois Central R. Co., 8 Cir., 256 F. 830, certiorari denied 249 U.S. 615, 39 S.Ct. 390, 63 L.Ed. 803; Cross v. Beguelin, 252 N.Y. 262, 169 N.E. 378.

The trial court made no specific finding as to Huron's knowledge of the stock purchase transaction. The language of the note of September 16, 1952, as to the outstanding stock of Pyramid and its ownership, together with the uncontradicted evidence of Pyramid's president to the effect that all auditors' reports of the financial condition of the corporation were forwarded to Huron while he was connected with the corporation requires the conclusion that it possesssed knowledge of the stock purchase.

A comparison of the report for 1951 with the report dated August 26, 1952 could not fail to give such information. In fact, the later report discloses the transaction in a single paragraph devoted entirely to that subject. If we take these two reports, together with the language of the note of September 16, 1952, the above conclusion in inescapable.

The defendant does not escape liability, however, even if plaintiff possessed the knowledge indicated above. The trial judge found upon amply supporting evidence that the confessed judgment was composed of a balance of $9,500 with interest due and unpaid on the $10,000 note of September 16, 1952 and about $5,000 and interest due on open account indebtedness for goods delivered by Huron subsequent to the date of the note. Insofar as the principal of the note is concerned, it represented no new indebtedness contracted after the stock sale transaction or after Huron's knowledge thereof. Rather it was an old indebtedness representing the balance due on the old note of 1951, secured by the mortgage. The form of the obligation was changed but no new credit was advanced, no new indebtedness was incurred. Huron had no right of election to become a creditor as to this item. The die was cast in 1951.

The open account indebtedness poses a different problem. This was incurred subsequent to September 16, 1952 according to the unchallenged finding below. As payments were made on the open account, they were applied upon the oldest items thereof. Credit for the unpaid portion of the open account was plainly granted after knowledge of the stock transaction had been acquired. To that extent, Huron may not recover. Cross v. Beguelin, supra.

No serious question is raised as to the right of the plaintiff to maintain this action. It was the sole judgment creditor. Shaw v. Ansaldi Co. Inc., 178 App.Div. 589, at page 601, 165 N.Y.S. 872. An execution on the judgment had been issued and returned unsatisfied. The requirements of the statutes, upon which the action is based, were thereby satisfied.

The total recovery below was fixed at $11,900 with interest representing Huron's damage by reason of the impairment of the capital of Pyramid as the result of the stock purchase transaction. Any damage exceeding the amount of $9,500 and interest may not be recovered. Any such damage arises by reason of Huron's election to extend further credit to Pyramid with knowledge of such impairment as above indicated.

The judgment below is modified by reducing the recovery to $9,500 and interest and, as so modified, is

Affirmed.