**In the Matter of DAWSON BROTHERS CONSTRUCTION CO. Inc., Bankrupt.**

**No. 42066.**

United States District Court
N. D. New York.
June 11, 1963.

Smith & Sovik, Syracuse, N. Y., for trustee.

Bond, Schoeneck & King, Syracuse, N. Y., for creditor.

**412**

BRENNAN, District Judge.

May the holder of installment notes given by a corporation in payment for the purchase of its own stock enforce the obligation at a time when the corporation has no surplus from which payment may be made is the broadly stated problem involved here.

Bernard M. Dawson, a creditor of the above named bankrupt, seeks to review the order of the Referee in Bankruptcy, dated December 12, 1962, which expunged his claim filed against the estate of the bankrupt. The claim arises out of the purchase by the bankrupt of its stock from three former shareholders. The record before the court consists of stipulated facts and certain oral testimony. It will be summarized briefly below.

On November 10, 1959, the bankrupt was adjudicated and it appears that a trustee was appointed and qualified. Thereafter Bernard M. Dawson, the present claimant, filed a claim against the bankrupt estate in the amount of $31,800 which represents the balance due upon the three said notes dated May 29, 1957 executed and delivered by the bankrupt to three former stockholders whose stock holdings were purchased by the bankrupt on the same date. The notes, by their terms, were payable in equal annual installments commencing July 1, 1958. Each note contained a provision to the effect that if the bankrupt should default in the matter of the payment of any installment due and such default shall continue for ten days after notice, then the balance due upon each note became immediately due and payable. The installment payments due on July 1, 1958 were paid. The notes thereafter were assigned by the holders thereof to the present claimant and the installment payment due July 1, 1959 was not paid. The claimant elected to declare the whole amount due and the present claim was thereafter filed against the estate.

It is stipulated that at the time of the purchase by the bankrupt of its capital stock on May 29, 1957, the corporation was solvent and the purchase thereof

did not result in any impairment of its capital. It is also stipulated that the bankrupt was insolvent at the time the unpaid balance owing on said notes became due and payable. This condition of insolvency has continued to date and the assets of the bankrupt are not sufficient to pay the general creditors in full.

The status of a creditor holding the evidence of an indebtedness representing the purchase of its capital stock under the above circumstances is the problem here. Stated in another way, the question is whether or not such a creditor can enforce the obligation of the bankrupt corporation which was valid when made because the corporation had a surplus but such surplus has disappeared at the time payment became due.

██ It is beyond argument that a corporation may purchase its stock from surplus. It is also beyond argument that a corporation may not purchase its own stock except from surplus. N.Y.Penal Law, Sec. 664, and the cases cited below are ample authority for the above statements. See also Melniker v. American Title & Guaranty Co., 253 App.Div. 570, 3 N.Y.S.2d 198; Syracuse Transit Corp. v. Girard Trust Co., 266 App.Div. 815, 41 N.Y.S.2d 583. Here the corporation had the required surplus at the time the purchase was made and the agreements to pay were executed. No surplus however remains from which the payment can presently be made. If made at all, it must come from the assets of the bankrupt estate which are subject to the claims of general creditors. This is not a new problem and same has been discussed and decided in several reported decisions.

As early as the decision in In re Fechheimer Fishel Co., 2 Cir., 212 F. 357, the question seems to have been directly passed upon under circumstances similar to those here. The following quotations seem to be appropriate. "If a stockholder sells his stock to a corporation which issued it, he sells at his peril and assumes the risk of the consummation of the transaction without encroachment upon the funds which belong to the cor-

poration in trust for the payment of its creditors". "His right (of payment) turned on the condition of the assets at the time payment was to be made and he could only be paid out of the surplus if any there should be". This decision is followed not only in New York State but in other jurisdictions whose statutes are similar to those of New York which forbid the purchase by a corporation of its own stock except when the purchase price thereof may be paid from its surplus. The New York decision often cited is Cross v. Beguelin, 252 N.Y. 262, 169 N.E. 378, which holds that an agreement by a corporation to purchase from a stockholder his stock is valid so long as the corporate surplus exceeds the price to be paid but becomes unenforceable when such surplus shrinks to a deficit. See also Topken, Loring & Schwartz Inc. v. Schwartz, 249 N.Y. 206, 163 N.E. 735, 66 A.L.R. 1179; Richards v. Wiener, 207 N.Y. 59, 100 N.E. 592; In the Matter of the Arbitration between Leon Friedman and Video Television Inc., 281 A.D. 815, 118 N.Y.S.2d 844; Engelken et al. v. Shanty Shops, Inc., 303 N.Y. 784, 103 N.E.2d 895. Similar holdings are found in comparable federal cases. See Mountain State Steel Foundries Inc. v. C. I. R., 4 Cir., 284 F.2d 737; In re Bell Tone Records, 86 F.Supp. 806.

██ The claimant does not particularly dispute the holdings in the above cases but seems to rely upon the stipulated fact that on May 29, 1957, the date of the stock purchase transaction, the bankrupt corporation took appropriate legal action to reduce its capital from $150,000. to $75,000. and that the required documents, accomplishing such reduction, were filed in the proper offices, as notice of the action taken. This court does not see any relevancy in this contention. The documents filed gave no notice of the deferred obligations created at the same time. Without doubt, subsequent creditor having notice of the impairment of a corporation's capital structure who thereafter extends credit is charged with the notice and effect of such impairment. First Trust Co. v. Illi-

nois Cent. R. Co., 8 Cir., 256 F. 830; Huron Milling Co. v. Hedges, 2 Cir., 257 F.2d 258. The holdings in the cited decisions are not in point here. The question here is simply one as to whether or not a deferred payment of a part of the purchase price of the capital stock of a corporation may be paid from general assets. The decisions first cited hold unequivocally that no such payment may be made. The reason therefor is apparent. A corporation in purchasing its own stock and deferring the payment thereof may tend to create the erroneous impression of financial soundness. The purpose of the statute and the decisions interpreting and applying same all reject the above contention.

The amendments to the statute since the decision in In re Fechheimer Fishel Co., supra, and the fact that the indebtedness sought to be enforced by the claimant was included in the balance sheet of the corporation are also urged by the claimant as indicating that the decision in the Fechheimer case is not decisive. These contentions have not been overlooked but do not militate against the application of the general rule referred to above. There is affirmative evidence that the creditors had no knowledge of the existence of the outstanding notes. They then had the right to rely upon the stated capital as a trust fund for their protection.

The Referee, by his decision, has expunged the claim in its entirety. Perhaps it makes little difference because this court is informed that the assets of the estate will not equal in amount the claims of the general creditors already filed. It would seem however that since the notes represented by the claim now in dispute were valid when made and are simply unenforceable because there is no surplus from which they can be paid; that rather than expunge the claim, it should be subordinated to the claims of the general creditors.

The court adopts the stipulated facts and the findings of fact of the Referee as its findings herein and concludes that the order of the Referee herein, referred

to, should be modified by providing that the claim in question be subordinated to the claims of general creditors and as so modified, the order of the Referee is affirmed and the petition to review is dismissed, and it is

So ordered.