In the Matter of **FLYING MAILMEN SERVICE, INC.,** Bankrupt.

**Charles GOLD, Plaintiff-Appellant,**

v.

**Herbert K. LIPPMAN, Trustee in Bankruptcy of Flying Mailmen Service, Inc., Defendant-Appellee.**

**No. 72 B 172.**

United States District Court,
S. D. New York.

Nov. 7, 1975.

Henry & Brecker, New York City, for plaintiff-appellant; Martin F. Brecker, New York City, of counsel.

Stephen J. Mydanick, New York City, for defendant-appellee.

## MEMORANDUM

LASKER, District Judge.

Charles Gold appeals from a decision and order of the Bankruptcy Court, Honorable Asa A. Herzog, which denied his application for payment of a secured claim and which ordered him to refund monies to the trustee in bankruptcy.

In settlement of an action pending in New York Supreme Court, Flying Mailmen Service, Inc. (debtor) agreed to pay Gold the sum of $150,000. The agreement, dated December 16, 1970, specifically allocated 17% of the amount payable as settlement of certain claims Gold might assert against the debtor and 83% as consideration for the repurchase of the debtor's common capital stock held by Gold.[1] To guarantee payment, the debtor granted Gold a secured lien against all of its present and future assets. Gold filed a financing statement as required by New York law, U.C.C. § 9–402.

Gold had received approximately $83,000. when on February 17, 1972 the debtor filed a petition under Chapter XI of the Bankruptcy Act. The debtor was subsequently adjudicated a bankrupt and a trustee in bankruptcy was appointed and qualified. The debtor is in default on the remainder of the debt.

By memoranda dated December 16, 1974 and July 2, 1974, and order dated October 2, 1974, the Bankruptcy Judge declined to enforce the original settlement agreement between Gold and the debtor or the security interest on the grounds that the executory portions of the agreement and the security interest were unenforceable as a result of the insolvency of the corporation. The judge held that the balance of the monies owed Gold constituted an unsecured claim subordinated to the claims of all general creditors. In addition, Gold was ordered to refund money paid him after the date that the debtor filed his petition in bankruptcy.

## I.

The first issue raised by Gold's petition is the validity of the December 16, 1970 settlement agreement and the security interest given to guarantee its performance. The Bankruptcy Judge was correct in finding that the provision of the settlement agreement relating to the repurchase of the debtor's stock (and the security interest guaranteeing that obligation) was unenforceable against the debtor corporation because it was insolvent.

Section 513(a) of the New York Business Corporation Law provides:

"(a) A corporation, subject to any restrictions contained in its certificate of incorporation, may purchase its own shares, or redeem its redeemable shares, out of surplus except when *currently* the corporation is insolvent or would thereby be made insolvent." (Emphasis added)

Section 514(b) of the Business Corporation Law states:

"(b) The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, *if at the time for performance* the corporation can purchase all or part of such shares under section 513." (Emphasis added)

Applying these sections to the present case, the debtor's agreement to repurchase its own stock may have been valid at the time of execution (§ 513(a)) but the debtor's obligation to pay for the

---

1. The sum of $57,000. was paid upon the execution of the agreement and the balance was to be paid in eighteen bi-monthly installments of $5,138.88, commencing March 1, 1971.

stock became unenforceable upon the debtor's insolvency (§ 514(b)). *Baxter v. Lancer Industries,* 213 F.Supp. 92, 96 (E.D.N.Y.1963); *Cross v. Beguelin,* 252 N.Y. 262, 265, 169 N.E. 378, 379 (1929); and the security interest became unenforceable at the same time. *In re Bay Ridge Inn, Inc.,* 98 F.2d 85, 87 (2d Cir. 1938).

## II.

■ Under New York Business Corporation Law any agreement by an insolvent corporation to repurchase its own stock is unenforceable. As a result, courts have either expunged claims arising from such an agreement, or have subordinated the claim to the claims of all existing creditors on the theory that subordination has the effect of expungement since the assets of the estate are generally less than the claims of general creditors. *First Trust Co. v. Illinois Central R. Co.,* 256 F. 830, 831 (8th Cir. 1919); *In re Dawson Brothers Construction Co.,* 218 F.Supp. 411, 412–413 (N.D.N.Y.1963). The rights of subsequent creditors who became such without notice of the purchase by the corporation of its own stock are also superior to the selling stockholder's claims. *First Trust Co. v. Illinois Central R. Co., supra,* 256 F. at 831. However a subsequent creditor *is* foreclosed from enjoying this priority if he extended credit *with notice* of the prior stock purchase by the corporation. *Huron Milling Co. v. Hedges,* 257 F.2d 258, 263 (2d Cir. 1958); *Bay Ridge Inn,* 98 F.2d 85, 87 (2d Cir. 1938); *Cross v. Beguelin, supra,* 252 N.Y. at 266, 169 N.E. 378.[2] As stated earlier, Gold filed a financing statement in accordance with N.Y.U.C.C. § 9–402. Gold argues that the filing of the statement constituted the notice necessary to prevail over subsequent creditors and appeals from the

decision below which held to the contrary.

■ The Bankruptcy Judge recognized the exception upon which Gold relies, but held that the filing did not constitute adequate notice because the financing statement did not indicate that the statement related to a debt incurred by the corporation to purchase its own stock. The narrow question is one of first impression. We agree with the Bankruptcy Judge that Gold's financing statement did not constitute notice sufficient to enable him to prevail over subsequent creditors.

In *First Trust Co. v. Illinois Central R. Co.,* a debtor corporation had repurchased its stock and issued bonds to cover the debt. The mortgage securing the debt was recorded and stated:

> "Whereas it now appears necessary and proper for the purpose of purchasing 1,125 shares of its capital stock from its present shareholders, . . . the railroad company has now resolved to issue . . . bonds." *Supra,* 256 F. at 831.

The court held that the recorded mortgage "was notice to all the world of the purchase of its own stock by the corporation" and the claims of persons who became creditors subsequent to the recording of the mortgage were therefore subordinate to the rights of the bondholders. No finding was made as to whether the subsequent creditors had actual knowledge. The decision merely remarked:

> "The distinction between subsequent creditors with notice and subsequent creditors without notice, who have become such relying upon appearances which were in fact false and deceitful, is well recognized." *Supra,* 256 F. at 831.

---

**2.** The trustee argues that this principle is not applicable because it is a creation of the common law that ceased to exist with the passage of §§ 513 and 514 of the Business Corporation Law. This contention is without merit. Cases which recognize the exception were based on actions which involved the statutory predecessor to those sections. See *Huron Milling Co. v. Hedges,* 257 F.2d 258 (2d Cir. 1958); *In re Dawson Brothers Construction Co.,* 218 F.Supp. 411 (N.D.N.Y. 1963); *Cross v. Beguelin,* 252 N.Y. 262, 169 N.E. 378 (1929).

794

Neither party nor the bankruptcy court has cited any authority which indictates that *actual* knowledge of a corporation's repurchase of stock is required. Although the court in *Huron Milling Company v. Hedges, supra,* did conclude that the creditor there had actual knowledge of the company's prior stock transaction, that conclusion was not determinative of any issue in the case. Indeed, the *Huron* court cited *First Trust Co., supra,* for the proposition that "a creditor with notice" is barred from recovery, using only the term "notice," not "knowledge."

The issue before us then is whether, to constitute adequate notice, a document must specifically indicate that the lien noted secures a debt incurred by a corporation for the repurchase of its own stock.

In *In re Dawson Brothers Construction Co., supra,* the court refused to accept as sufficient notice to creditors a document filed by the *corporation* which noted a reduction of capital, but which gave no notice of the deferred obligations simultaneously created. Although the court cited *First Trust Co.* for the proposition that:

"[a] subsequent creditor having notice of the impairment of a corporation's capital structure who thereafter extends credit is charged with the notice and effect of such impairment."

it nevertheless concluded, on the facts before it that:

"There is affirmative evidence that the creditors had no knowledge of the existence of the outstanding notes. They then had the right to rely upon the stated capital as a trust fund for their protection." 218 F.Supp. at 413

The fatal deficiency in the document filed was not a failure to note the repurchase of stock, but rather an ellipsis of information as to the corporation's liability for "outstanding notes."

Again, *In re Bay Ridge Inn,* 98 F.2d 85 (2d Cir. 1938) does not specify that to be effective against later creditors a lien securing a corporation's debt for the purchase of its own stock must indicate on its face the origin of the obligation. Nevertheless, the Court of Appeals there held that the recorded mortgage in question did not constitute adequate notice to subsequent creditors because:

"On its face the mortgage indicated a consideration moving to the corporation . . . The loan was never made and the mortgage was used not to obtain funds for the corporation, but only to give the mortgagees security when they sold their stock. The record gave no notice to creditors of what actually occurred. Creditors who examined the record would have had reason to suppose that the corporate assets were augmented by the amount of a loan of $2,025, instead of being depleted by payments to the mortgagees." *Supra,* 98 F.2d at 87.

The decision falls squarely within the exception stated in *First Trust Co.* that recorded instruments which contain "false and deceitful" information cannot be deemed to give notice to subsequent creditors.

Thus although no case has specifically determined whether a notice of lien which does not specify that the underlying debt arose from a corporate repurchase of its stock is adequate to limit the rights of later creditors, the only notices which have been judicially determined to have that effect have contained such information, and we conclude that it is required.

It is true that Gold perfected his lien in compliance with New York law, U.C.C. § 9–402, which was enacted to simplify filing procedures, (see Official Comment and New York Commission Comments to § 9–402) and "is designed merely to put creditors on notice that further inquiry is prudent." *Marine Midland Bank v. Conerty Pontiac-Buick,* 77 Misc.2d 311, 352 N.Y.S.2d 953, 958 (Sup.Ct. Albany Cty.1974); *accord, Bank of Utica v. Smith Richfield Springs, Inc.,* 58 Misc.2d 113, 294 N.Y.S. 2d 797, 799 (Sup.Ct. Oneida Cty.1968). However, the transaction which gave rise to the lien here does not involve an ordinary purchase and sale contract.

Rather, as the court in *In re Bay Ridge Inn* noted:

"Where the stockholders imposed a lien upon corporate assets for their own benefit and to secure payments on sales of their stock, they were in effect paying a secret dividend to themselves in derogation of the rights of . . . creditors." *Supra,* 98 F.2d at 87.

Notice of a debt arising out of a corporation's purchase of its own stock should be adequate to ensure that potential creditors are aware not only of the lien but that the underlying transaction has caused a diminution of the corporate capital. Merely to put a creditor "on notice that further inquiry is prudent" is altogether insufficient for that purpose.

■■ Federal law governs the relative priorities of claims asserted against a bankrupt estate. *In re Bell Tone Records,* 86 F.Supp. 806, 809 (D.N.J.1949). While that determination should not be made "without appropriate regard for rights acquired under rules of state law" (*Prudence Corporation v. Geist,* 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293 (1942)), the narrow exception carved here does not undermine the general effect of the U.C.C. filing requirements.

The case at hand involves a special type of transaction; one which not only accorded the corporate creditor a lien against the company's assets—a perfectly normal matter, and of which normal U.C.C. notice is adequate to alert a later creditor—but a transaction which simultaneously reduced the corporate capital—an unusual matter as to which normal U.C.C. notice is inadequate. Moreover, while it is always a risky game to predict how another court would treat the matter, we can think of no reason why the New York Courts would construe the application of the statute differently.

### III.

The Bankruptcy Judge allocated the $83,000. paid to Gold prior to the debt-or's filing of the Chapter XI petition by applying $25,000. to settlement of Gold's claims against the debtor and the remainder of $57,700. to the repurchase of the debtor's stock. His rationale was first, that the agreement specified how .monies paid Gold were to be allocated; and second, that while a creditor may normally apply payments to any debts owed by the debtor, payments made by a corporation while it is without surplus must first be credited to claims ·other than those for monies due on the repurchase of the corporation's shares. *In re Bell Tone Records, Inc., supra.* As a result, the court held that no further monies were due Gold and Gold was directed to refund the money he had received subsequent to the filing of the bankruptcy petition.

Gold argues that this apportionment was improper. No finding was made that the debtor lacked surplus at any time prior to the filing of the petition, and Gold contends that any monies he received prior to the filing could be applied as he chose, namely, the debt which represented the repurchase of stock.

■ We agree with the Bankruptcy Judge's disposition on the first argument. He properly found that the agreement between Gold and the debtor specified how the monies due were to be allocated. The contract had allocated 17% of the total amount payable as settlement of certain claims and 83% as consideration for the debtor's repurchase of stock, and it is reasonable to conclude that each installment was to be allocated similarly.

However, even if the agreement is so construed, both parties are correct that the case must be remanded for determination of the date of insolvency. If the trustee is correct that the debtor was insolvent as of the date of the execution of the December 16, 1970 agreement, then none of the money paid Gold, either before or after the filing of the bankruptcy petition, can be allocated to the repurchase of stock debt and Gold would have to refund all monies received in excess of $25,000. On the other hand, if

the Bankruptcy Judge found that insolvency occurred on a different date, the allocation would be affected accordingly.

## IV.

■ The trustee in bankruptcy urges that we declare the settlement agreement of December 16, 1970 unconscionable and void. This defense was not asserted in the original answer to Gold's petition and the Bankruptcy Judge refused to consider the claim on reargument.

We believe that the Judge could properly refuse to hear the alleged counterclaim since the pleadings were not amended to include it and it was not a proper matter for reargument.

The decision on this point is therefore affirmed without prejudice to the exercise of such rights as the trustee may have to assert the claims hereafter.

The case is remanded to the Bankruptcy Court for further proceedings to determine the date of the debtor's insolvency, to apportion the monies received by Gold accordingly, and to allow the trustee to move to amend his answer.

It is so ordered.